BRENNAN ET AL. V. THE CITY OF WEATHERFORD AND H. N. BRADSHAW.

*(Case No. 4026.)*

1. FRANCHISE.— The creation of a corporate franchise is an attribute of sovereignty to be exercised solely by the supreme power of the state. Such franchise being amenable only to the power which created it, that power alone can question the legality of its existence, by such proceeding as in its wisdom it may adopt.

2. CONSTRUCTION. —A more liberal rule of construction is allowed, in favor of public charters granted for the general good, than in private charters for individual gain.

3. CORPORATION — CITY CHARTER. — By the general incorporation act of March 15, 1875, the legislature provided that a city might abandon its existing charter, and become incorporated under the general law, by a vote of two-thirds of its city council, which action should be entered on the journal of proceedings, and a copy thereof, under the corporate seal, should be filed and recorded in the office of the clerk of the district court of the county in which such city is situated. On a proceeding to enjoin the collection of taxes by the new city government operating under the general law, but which did not attest the proceedings adopting the general incorporation law, under a corporate seal: *Held* —

    1. The controlling prerequisite of the statute for the acceptance of the new charter was the two-thirds vote of the city council, and the attestation by the corporate seal was not an essential prerequisite to the existence of the new corporation.

    2. It being shown that the city had existed for twenty years without a corporate seal, it was estopped from denying its corporate existence, and its citizens are in like manner estopped in a mere collateral proceeding.

4. QUO WARRANTO — COLLATERAL PROCEEDING. — In a proceeding where the question, whether a corporation exists or not, arises collaterally, the courts will not permit the corporate character to be questioned, if it be acting under color of law, and recognized by the state as such. Such question can only be raised by the state itself, by *quo warranto* or other direct proceeding.

APPEAL from Parker. Tried below before the Hon. A. J. Hood.

Suit was instituted August 19, 1879, and this, as finally tried, was by P. F. Brennan and sundry other citizens of the city of Weatherford, in the county of Parker, as plaintiffs, against that city, and H. N. Bradshaw as its assessor and collector of taxes.

Judgment below was rendered, sustaining general and special demurrers to the petition, from which this appeal is taken.

The material allegations in the petition are:

1. That the legislature of the state of Texas, by special act approved January 2, 1858, incorporated the " town of Weatherford."

2. That by section 1 of the subsequent general incorporation act, approved March 15, 1875 (Laws second session 14th Leg., 113), it was provided " that any city within the limits of this state, containing one thousand inhabitants or over, may accept the provisions of this act, in lieu of any existing charter, by a two-thirds vote of the city council of such city, which action by the city council shall be held at a regular meeting thereof, and entered upon the journal of their proceedings, and a copy of the same, signed by the mayor and attested by the city clerk or secretary, under the corporate seal, filed and recorded in the office of the clerk of the district court of the county in which such city is situated; and the provisions of this act shall be in force, and all acts heretofore passed incorporating such city, which may be in force by virtue of any existing charter, shall be repealed from and after the filing of the said copy of their proceedings as aforesaid."

3. That on April 2, 1878, the town of Weatherford, intend-

ing to avail itself of the provisions of this general incorpora-
tion act, proceeded to accept the same under the name "The
City of Weatherford," by a two-thirds vote of the city council,
had at a regular meeting thereof, and entered upon the journal
of their proceedings, and by filing and having recorded in the
proper office a copy of the same, signed by the mayor and at-
tested by the city secretary, but which was not under the cor-
porate seal.

4. That the "town of Weatherford" had no corporate seal,
but that some months after the above proceedings, and after
the copy had been recorded, but before the institution of this
suit, the "city of Weatherford" adopted a corporate seal,
and had the same affixed to said copy.

5. That the "city of Weatherford," acting under the new
charter, on the first Tuesday in April, 1879, elected a city
council, and the defendant Bradshaw as assessor and collector
of taxes; and that the council subsequently passed by-laws
providing for the levy, assessment and collection of municipal
taxes, poll, *ad valorem* and occupation, against the citizens of
said city, including plaintiffs; and that defendant Bradshaw
would proceed to collect the same unless enjoined.

6. That the "town of Weatherford" was never, in fact,
legally incorporated under the general incorporation act, be-
cause of the failure to affix the corporate seal to the copy of
their proceedings intended for this purpose, and that conse-
quently "the city of Weatherford" had no legal corporate
existence, and the proceedings in the election of officers and
the levy of taxes was unauthorized and void.

7. The pleadings concluded with a prayer that "process be
served upon the city of Weatherford and defendant Bradshaw,
* * * that an injunction be granted to perpetually restrain
them from performing any further corporate action under
their present unlawfully accepted charter of 1878, * * *
and that the said Bradshaw, on final hearing, be perpetually re-
strained from the collection of the taxes, or any portion of
them, mentioned in the petition."

To this pleading defendants filed general and special demurrers, presenting, among other questions, that the suit should have been by proceedings in the nature of a *quo warranto.*

The demurrers were sustained, the judge presiding assigning as his reason therefor, that so much of the general incorporation act as required the copy of the proceedings by the council to be under the corporate seal, was not mandatory, but directory only.

*P. F. Brennan* for appellant.

I. It is necessary that the corporate seal be upon the copy of the proceedings in controversy, wherein the town of Weatherford claimed to accept the general incorporation act, approved March 15, 1875, General Laws, in accordance with section one of said act, acceptance being invalid without it. 1 Pasch. Dig., art. 8210. See by way of relative and incidental application, Pasch. Dig., art. 3961; Angell & Ames on Corp., secs. 82, 83; Dillon on Corp., secs. 23 *et seq.;* State *ex rel.* Attorney General *v.* Lee, 21 Ohio St., 662; Warner *v.* Callender, 20 Ohio St., 190; Fire Department *v.* Kip, 10 Wend., 268; Walker's American Law, 6th ed., p. 226, note; Potter's Dwarris on Statutes, p. 222, note 29; 5 Ohio, 59, 528; 7 Ohio, 109–115; 11 Ohio, 219, 222, 228; 14 Ohio, 569–580; Cooley's Const. Laws, 394–5, and notes; 8 Ohio, 257–286; 17 Ohio, 263; 11 Ohio, 96; 18 Johns., 137; 15 Ohio, 334; 4 Kent, 125; Angell & Ames on Corp., ch. 2, § 8; Dwarris on Statutes, 2d Eng. ed., 668–9; 22 Wis., 365; 17 Ohio, 542; 7 Ohio, 261; 3 Ohio, 564–5; 1 Ohio, 335; 9 Cow., 506–7; 2 Cranch, 127. This court is well aware of the unyielding, rigid and inflexible pertinacity with which the law clings to the following principle: that corporate bodies substituting new for old charters, and associations accepting any charter, must comply strictly and literally with all of the precedent conditions, when conditions are imposed. In all the wide and varied range of civil jurisprudence, this principle prevails; there is no deviation or deflection from it; there is no escape, no subterfuge, no re-

source, however subtle and ingenious, that can be employed to evade the direct, certain, positive and absolute conditions imposed by the law. And why not? The power belongs to the law; it is the law itself. The law is the master. The servant may accept on conditions, the conditions are made known, and he may accept or not as he sees fit; but if he undertakes to accept, the least he can do or ask to obtain the benefits offered, is to perform the conditions imposed, and which must be performed before the benefits attach.

II. An injunction suit may be maintained against the levy of an unlawful tax by a corporation, or persons acting as such corporation. High on Injunctions, § 354; Dillon on Corp., §§ 213, 731, 736 *et seq.;* 4 Tex., 402. It is contended in the exceptions to plaintiff's petition that this suit is improperly brought, and that the proper remedy, if any, is by *quo warranto.* The object of this suit was to restrain the collection of taxes unlawfully imposed. Proceedings in *quo warranto* would be ineffectual, then, to accomplish this purpose. It cannot, in the light of the law, be pretended that a *quo warranto* proceeding would have arrested or prevented the collection of the taxes complained of in plaintiff's petition. Then it follows that either there was no remedy at all for the prevention of the collection of the taxes complained of, or if so, the remedy is by injunction. The very essence of a *quo warranto* proceeding, as indicated by the common law, and our own statute upon the subject, which went into effect since this suit was brought, is to obtain a judgment of ouster against the party complained of; and the question is: Is there no remedy under our comprehensive and latitudinarian system of jurisprudence (which seeks a remedy for every possible wrong) to prevent and restrain the action of a party illegally created, and without authority, acting to the detriment of the citizens of the state and a so-called corporation? It will not be disputed that a corporation legally created, and afterwards acting *ultra vires,* could be restrained from the performance of unlawful acts. Shall an illegal body, having no foundation in law, exercise immunities which a lawful body could not enjoy,

merely by virtue of its illegality?　Shall the people first pay their money with no hope of ever recovering it, and then, after paying it, ask in stentorian tones the authority the party has for collecting it by a proceeding in *quo warranto?*　What good is a remedy that has no application to the disease?　It may be said that the acts of a *de facto* officer cannot be questioned in a collateral proceeding, as is said in 1 Tex., 653. In that instance it must be remarked that there was a *de jure* office.

*Lanham, Roach & Stevenson* and *Jasper N. Haney* for appellees.

I. The district court properly sustained the demurrers to plaintiff's petition.　Special act of legislature, approved January 2, 1858; R. S., arts. 340–505; Dillon on Mun. Corp., §§ 130–32.

II. The directions in the act of the legislature (R. S., 340) of 1875, authorizing a city to adopt its provisions in lieu of any existing charter, by resolution of the city council, etc., by a two-thirds vote to be entered upon the journal of their proceedings, was strictly followed and substantially *complied* with; and the direction to the city secretary as to attesting the copy of the proceedings to be filed and recorded in the district court, etc., under the corporate *seal*, is merely directory and not mandatory.　Trueheart v. Addicks, 2 Tex., 224; Sydnor v. Roberts, 13 Tex., 598; Fleckner v. B'k of U. S., 8 Wheat., 357; Eureka Co. v. Bailey Co., 11 Wheat., 488; Potter's Dwarris on Statutes, 221–2, note 29; Caniff v. Mayor, 4 E. D. Smith (N. Y.), 430; Marchant v. Langworthy, 6 Hill, 646; Striker v. Kelly, 7 Hill, 9; Rex v. Loxdale, 1 Burr., 447.

III. The writ of injunction is not the proper remedy to adjudicate the question of the *legal* existence, or non-existence, of the corporation of the city of Weatherford.　The proper remedy is "*quo warranto*" in the name of the state and by its authority.　As will be seen, the petition was filed by individuals only, and seeks to adjudicate the legal existence

of an integral part of the state government (viz., the city of Weatherford acting by authority of the state of Texas and for it), by a collateral attack upon a mere technical omission. R. S., appendix, 45; State *v.* S. Pacific R. R. Co., 24 Tex., 117–21; 2 Bouv. Law Dict., 405; Dillon on Mun. Corp., §§ 141, 680, 735, note 2, 719, 714, 716, 718, 727; Aulanier *v.* Governor, 1 Tex., 666; Grant *v.* Chambers, 34 Tex., 588; Banton *v.* Wilson, 4 Tex., 400; Wright *v.* Allen, 2 Tex., 158; Hilliard on Injunctions, 447.

BONNER, ASSOCIATE JUSTICE.— The legal effect of the pleadings of plaintiffs was to raise, in a collateral proceeding, the question of the existence in law of the corporation of "the city of Weatherford," its existence in fact being admitted.

There are two questions presented by the record:

1. Could the plaintiffs in their individual names institute this proceeding, or should it have been by information in the nature of a *quo warranto* in the name of the state?

2. Was a corporate seal to the copy of the proceedings of the city council, adopting the general incorporation act, an essential prerequisite to give vitality to the new corporation?

*First.* As to the necessity of proceeding by information in the nature of a *quo warranto.*

The creation of a corporate franchise is an attribute of sovereignty to be exercised solely by the supreme power of the state. Such franchise being amenable only to the power of its creation, it follows that this power alone can question the legality of its existence, by such proceedings as in its wisdom it may adopt.

This proceeding was formerly by the writ of *quo warranto*, but since the statute of Anne (9 Ann. Ch. 20, A. D. 1711), now expressly re-enacted in many of its essential features by the legislature of this state (Appendix, R. S., 47), it has been by information in the nature of a *quo warranto.*

Although this in some respects partakes of a criminal character, it is essentially a civil proceeding to correct the usurpa-

tion, non-user or misuser of a public office or a corporate fran-
chise.   High on Extraordinary Legal Remedies, chap. 13; id.,
§§ 684, 696, 697, 698; Angell & Ames on Corp., 734; 2 Dil-
lon on Mun. Corp., §§ 680, 713, 714, 716; High on Inj.,
§§ 798, 799; Cooley on Taxation, 536, 574; The State *v.* Har-
die, 1 Ired. Law (N. C.), 42; President and Trustees, etc., *v.*
Thompson, 20 Ill., 197; Hamilton *v.* President and Trustees,
etc., 24 Ill., 22; Kittering *v.* City of Jacksonville, 50 Ill., 39;
Kayser *v.* Trustees, etc., 16 Mo., 88; The State *v.* Carr, 5 N. H.,
367; Grant *v.* Chambers, 34 Tex., 573; Banton *v.* Wilson,
4 Tex., 400.

Such questions, as said by Mr. Cooley, are " generally ques-
tions between the corporators and the state, with which private
individuals are regarded as having no concern.   In proceed-
ings where the question whether a corporation exists or not,
arises collaterally, the courts will not permit its corporate char-
acter to be questioned, if it appear to be acting under color of
law, and recognized by the state as such.   Such question should
be raised by the state itself, by *quo warranto* or other direct
proceeding.   And the rule, we apprehend, would be no differ-
ent if the constitution itself prescribed the manner of incor-
poration." Cooley on Const. Lim., 254.

This suit should have been brought by information in the
nature of a *quo warranto*, and the special demurrer to this
effect was well taken.   That the court did not base the judg-
ment upon this ground did not affect its validity.

*Second.*   As to the want of a corporate seal.

Counsel for appellants desire that we pass upon this ques-
tion also, should our opinion be adverse to the rights of plaint-
iffs to institute the suit.

As it is not necessary to the decision of the case, it would
be improper to do so until the question should have been
argued on behalf of the state, were we inclined to the opinion
that the want of a corporate seal was necessarily fatal to the
existence of the new corporation.

There were two principal objects intended to be provided

for by the statute: one, the mode by which the new charter could be accepted by a two-thirds vote of the city council, had at a regular meeting and entered upon the journal of the proceedings; the other, the means by which this vote could be authenticated and placed upon the public records, by a copy of these proceedings signed by the mayor, attested by the city clerk or secretary, under the corporate seal.

Mr. Cooley sums up, as the general result of the cases which discriminate between statutes which are mandatory and those which are directory only, that "those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly and prompt conduct of the business, and by a failure to obey which the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory; and if the act is performed, but not in the time or in the precise mode indicated, it may still be sufficient, if that which is done accomplishes the substantial purpose of the statute." Cooley's Const. Lim., 77.

A more liberal rule of construction is allowed in favor of public charters granted for the general good than in private charters for individual gain. Bradley *v.* R. R. Co., 21 Conn., 306.

We think that the controlling prerequisite of the statute for the acceptance of the new charter, was the two-thirds vote of the city council, and that the legislature did not intend, in a case like the one now before the court, that the attestation by the corporate seal should be an absolutely essential prerequisite to the existence of the new corporation.

It is affirmatively shown by the petition that the old corporation had existed for about twenty years; that it had no seal, and consequently could not by that means have authenticated its former proceedings, and the presumption is that they had been authenticated as in this instance. The city of Weatherford was by its acts estopped from denying its corporate existence, and it is believed that the plaintiffs, as part

of the individual members composing this corporation, are likewise estopped in a mere collateral proceeding.

The reasons which anciently required the formality of a seal have to a great extent ceased to exist, and with this, under modern decisions, much of that sanctity which once attached to them.

We are of opinion that there should be a broad distinction between those cases in which parties are held to answer *in invitum* by legal process, in which a seal of a certain character established by law is made an essential requisite to the validity of official proceedings, and those in which a mere private seal, fashioned after the peculiar fancy of an individual or corporation, is used for private purposes.

AFFIRMED.