## City of El Paso v. Mrs. Frank Ruckman.

### No. 670. Decided May 30, 1898.

**1. Public Corporation—Existence Not Questioned Collaterally.**

When the creation of a public corporation, municipal or quasi-municipal, is authorized by statute and a corporation has been organized under the color of such authority, its corporate existence can not be inquired into by the courts in a collateral proceeding, but only by a suit for that purpose by the State or under its authority. (Pp. 89, 90.)

**2. Same—Existing Corporation Acquiring Additional Powers.**

Such rule, which applies to the acquiring of a corporate existence under the laws of this State, for school purposes, by an unincorporated town, should apply also to the acquiring by an existing municipal corporation of the additional authority to manage its public schools. (P. 90.)

**3. Same.**

A city in 1882 voted to assume control of its public schools, proceeding under and complying with Revised Statutes 1879, articles 3781, 3782, instead of section 2 of the Act of April 3, 1879, by which those articles were repealed; under which election—not sufficient to legally create the city an independent school district—it assumed and exercised, without question, control of its schools until 1895. Held, that its right to such powers as an independent school district could not be questioned by defendant in a suit by the city to recover taxes levied by it for school purposes in the years 1894 and 1895. (Pp. 90, 91.)

**4. Same—Presumption.**

The taxpayers of the city having at an election held in 1883 voted a tax for schools, it would be conclusively presumed in such suit that the city was, in legal effect, a separate school district when said election was held. (P. 91.)

**5. Same—Case Questioned.**

The rulings in Conkling v. El Paso, 44 Southwestern Reporter, 879, and El Paso v. Conkling, 91 Texas, 537, questioned. (P. 91.)

Questions certified from the Court of Civil Appeals for the Fourth District, in an appeal from El Paso County.

*Millard Patterson* and *Wyndham Kemp,* for appellant.    An independent school district is a quasi-municipal corporation exercising public functions only, and when it is shown that a city has as such district gone on for more than fifteen years raising taxes and making improvements for educational purposes, and has had its school affairs during all of that time in the hands of a board of trustees, which board is created by law with corporate powers, and all persons in any way interested have acquiesced in such action, and the city has been recognized in every way as an independent school district and has as such exercised all of the usual franchises of such a corporation, and a large public free school system has grown up, in a simple action to recover school taxes no question can be raised respecting the legality of its organization, and no ex post facto inquiry can be permitted to undo its corporate existence.    Presidio County v. Bank, 44 S. W. Rep., 1069; Eustis v. City of Henrietta, 37 S. W. Rep., 636; White v. City of Quanah, 27 S. W. Rep., 839; McCrary v. City of Comanche, 34 S. W. Rep., 680; Brennan v. Bradshaw, 53 Texas, 339; Troutman v. McCleskey, 27 S. W. Rep., 173; Graham v. City of Greenville, 67 Texas, 68; Sherwin v. Bugbee, 16 Vt., 443; Keweenaw Assn. v. School Dist., 57 N. W. Rep., 405; Rice v. McClelland, 58 Mo., 117; Jameson v. People, 16 Ill., 257; Stuart v. School Dist., 30 Mich., 70; People v. Maynard, 15 Mich., 470; Rumsey v. People, 19 N. Y., 41; Lanning v. Carpenter, 20 N. Y., 447; State v. Bunker, 59 Maine, 366; People v. Salomon, 54 Ill., 41; People v. Lothrop, 24 Mich., 235; School Dist. v. Joint Board, 27 Mich., 3; Bird v. Perkins, 33 Mich., 30; Hamilton v. San Diego County, 41 Pac. Rep., 305; 21 Am. and Eng. Enc. of Law, 783; Clement v. Everest, 29 Mich., 23; 5 Am. and Eng. Enc. of Law, 96; State v. Carroll, 38 Conn., 449; Bassett v. Porter, 4 Cush., 487; Bow v. Allenstown, 34 N. H., 351; Dillingham v. Snow, 5 Mass., 547; State v. Leatherman, 38 Ark., 81; Worley v. Harris, 82 Ind., 493; Dill. Mun. Corp., secs. 22, 24, 84; Simonton on Mun. Bonds, sec. 3; Ashley v. Board, 60 Fed. Rep., 55; Rolls County v. Douglas, 105 U. S., 728; 2 Beach Pub. Cor., sec. 1357; State v. Railway, 25 Pac. Rep., 296; Trumbo v. People, 75 Ill., 562; People v. Trustees, 87 Ill., 41; Alderman v. School Directors, 91 Ill., 179; Stockle v. Silsbee, 41 Mich., 621; Voss v. Union School Dist., 18 Kan., 467; School Dist. v. State, 29 Kan., 58; Barton v. School Dist., 29 Pac. Rep., 43; Railway v.Wilson, 6 Pac. Rep., 281; Tied. Mun. Corp., secs. 93, 187a; People v. Farnham, 35 Ill., 562; Riley v. Garfield Township, 38 Pac. Rep., 563; Harper County v. Rose, 140 U. S., 75; Comanche County v. Lewis, 133 U. S., 201.

*A. Blacker* and *L. H. Davis,* for appellee.—The city could not have been made an independent school district in 1882, with power to levy a tax for the support and maintenance of the public free schools therein, except under the Act of the Legislature of the State of Texas, approved April 3, 1879, by substantially, at least, complying with its provisions, which it appears was not done, and failing in this, no amount of acquiescence by taxpayers and the public, no difference how much money

was expended in building schoolhouses, the election of a board of trustees, and doing other acts in the maintenance of the schools, would have the effect to preclude the taxpayer from setting up, in a suit brought against him by the city for the collection of taxes for the support of the schools, the fact that the city was not an independent school district, or any other fact which would show a want of authority to impose the tax. If the city was not an independent school district, it had no power to levy and collect taxes for the support and maintenance of the schools. Conklin v. City of El Paso, 44 S. W. Rep., 879.

GAINES, Chief Justice.—This case comes to us upon a certificate from the Court of Civil Appeals for the Fourth Supreme Judicial District. The statement and questions are as follows:

"In April, 1882, and in October, 1882, elections were held in the city of El Paso in reference to the control of its public schools, but in neither case was the election such as to legally constitute the city a school district. The city, however, began to act as an independent school district in the spring of 1882, and has ever since exercised such control in the . manner and under the circumstances hereinafter set forth. The election of October, 1882, was by the qualified voters to decide whether the control should be by the council or by trustees, and the result of this vote was in favor of control by trustees by more than two-thirds of the votes. On December 5, 1882, an election was held, at which trustees were elected.

"The council ordered an election to take place on March 31, 1883, for the purpose of determining whether or not there shall be levied on the taxable property within the limits of the city a tax not to exceed one-half of 1 per cent, in addition to the pro rata of the available school fund from the State, as may be necessary to conduct the public schools, etc., at which only taxpayers should vote. The vote was practically unanimous in favor of the tax, and more than two-thirds of the votes.

"It was admitted that ever since the year 1882 the city of El Paso has been acting as an independent school district, organized with a board of trustees such as is provided in chapter 67 of the Acts of 1879. That soon after said election in November, 1882, to wit, in December, 1882, an election was held, at which a board of trustees was elected to take charge of, manage, and control the public free schools of the city of El Paso, and ever since the year 1882 all the public free schools of the city have been in the hands of and under the management and control of such board of trustees; that regular elections have been held ever since the year 1882 in the city of El Paso for the selection of trustees as members of said board, at which such trustees have been elected by the qualified electors of said city; that four large public school buildings have been erected under the auspices of said board of trustees in the city of El Paso since said election in the spring of 1882, and a large public free school system has grown up in said city and has existed in said city for more than fifteen years. That during all of said time taxes have been

levied and collected annually for the maintenance and support of the public free schools of said city, and ever since the issuance of the school bonds mentioned in the plaintiff's original petition taxes have been levied and collected annually to pay the interest and provide a sinking fund on the same. And that prior to the year 1897 no question was ever raised or made respecting the legal existence of the city of El Paso as an independent school district or the legality of the school bonds mentioned, and no question raised prior to that year respecting the legality of either the school maintenance tax or the school bond tax. That ever since the spring of 1882 said city has received regularly its pro rata of the available school fund.

By a charter granted the city in 1889, the Legislature recognized El Paso as a school district by providing that it might levy a certain tax to maintain its public schools, and after this the city issued said school bonds.

QUESTIONS.—"No. 1. Neither of the elections of April, 1882, or November, 1882, being sufficient to legally create the city an independent school district, under the state of facts shown above relative to the long continued exercise by it of the powers of a school district, can its legal existence as such at and since the time it so commenced to act be inquired into in a suit by the city to recover taxes levied for school purposes for the years 1894 and 1895?

"No. 2. The election of March 31, 1883, at which the taxpayers voted the tax for schools, being sufficient, is it conclusively presumed from the long continued exercise by the city (since the spring of 1882) of the functions of a school district as shown in the above statement, that when said election of March 31, 1883, was had, it was legally in existence as a school district?"

The rule is well established that when the creation of a public corporation, municipal or quasi-municipal, is authorized by statute and a corporation has been organized under the color of such authority, its corporate existence can not be inquired into by the courts in a collateral proceeding. The validity of the incorporation can only be determined in a suit brought for that purpose in the name of the State or by some individual under the authority of the State, who has a special interest which is affected by the existence of the corporation. Graham v. The City of Greenville, 67 Texas, 62, and authorities there cited. See also the following cases: Town of Henderson v. Davis, 106 N. C., 88; Town of Searcy v. Yarnell, 47 Ark., 269; State v. Fuller, 96 Mo., 165; Worley v. Harris, 82 Ind., 493; State v. Carr, 5 N. H., 367; State v. Wainwright, 50 N. J. Law, 555; Mendenhall v. Burton, 42 Kan., 570; Austrian v. Guy, 21 Fed. Rep., 500.

In the case of Graham v. The City of Greenville, cited above, Chief Justice Willie, speaking for the court, says: "But admitting that the vote was taken in a manner not sanctioned by the Constitution and laws, it was but an irregularity which did not render the action of the council

void and ordinances passed in reference to the annexed territory of no effect. If a municipality has been illegally constituted, the State alone can take advantage of the fact in a proper proceeding instituted for the purpose of testing the validity of its charter. When the question arises collaterally, says Mr. Cooley, 'the courts will not permit its corporate character to be questioned, if it appear to be acting under color of law, and recognized by the State as such.' And this though the manner of incorporation prescribed by the Constitution had not been followed."

In the case of the City of St. Louis v. Shields, 62 Missouri, 247, it is held that the rule prevails, though a compliance with constitutional requirements may be in question.

The law which authorizes incorporated cities and towns in this State to assume control of their public schools confers upon such as may exercise the right a grant of additional municipal powers and stands upon the same footing as an original grant of the municipal franchise. Under our statutes, any town or city not incorporated may by a compliance with their provisions acquire a corporate existence for the sole purpose of managing the free schools within their limits, and in such a case the rule clearly applies; and therefore we think the rule should also apply to an existing municipality which has sought to acquire the additional authority of the management of its schools. In the latter case, the powers of two corporations, either of which might legally exist in the same territory as a separate corporation, are granted to one corporate body, and no reason is seen why the same effect should not be given to an irregular proceeding to obtain control of the schools, where an existing incorporation attempts to avail itself of the benefit of the law, as is given in case of a community where no corporation exists.

We have held that articles 3781 and 3782 of the Revised Statutes of 1879, in so far as they provided the mode by which a city or town could obtain control of the schools within its limits, were repealed by the Act of April 3, 1879. Laws 1879, p. 76. But it was not without difficulty that we arrived at this conclusion. It is not strange, therefore, that when the citizens of El Paso sought to avail themselves of the benefit of the statute, they should have been misled as to the method of procedure. But under the rule previously announced, if the election was held under articles 3781 and 3782 of the Revised Statutes, upon a petition of twenty property taxpayers, instead of being held under section 2 of the act above named, which required the written application of fifty qualified voters and a majority vote of the qualified electors of the city, this was an attempt to incorporate by virtue of the law, and the mistake as to the statute which controlled the procedure did not render the assumption of the control of the free schools by the city wholly void.

The election was irregular, and for that reason might have been set aside in a proper proceeding instituted for that purpose. But having been acquiesced in by the State and all parties at interest, and the control of the schools having been surrendered by the State authorities to the city, it was an effective and legal control. It follows that, when in

1883, the election was held to determine the question whether a tax should be levied to aid in support of the schools, the city of El Paso had legal control of its public schools under its charter.

Section 10 of article 11 of the Constitution is as follows: "The Legislature may constitute any city or town a separate and independent school district. And when the citizens of any city or town have a charter authorizing the city authorities to levy and collect a tax for the support and maintenance of a public institution of learning, such tax may hereafter be levied and collected, if, at an election held for that purpose, two-thirds of the taxpayers of such city or town shall vote for such tax." The Act of March 26, 1881, authorized every city and town in the State which had become a separate school district to levy a tax for the support of the public schools—provided that at an election held for that purpose two-thirds of the taxpayers should vote therefor. 1 Sayles' Civ. Stats. (1888), art. 425a.

It follows from what has been said that, although the control of its schools by the city of El Paso may have been irregularly acquired, and although such control may have been subject to be taken away by a proper proceeding brought for that purpose, until so taken away it was a lawful control, and that the city was for the time a separate school district and entitled upon a compliance with the Constitution and laws to levy a tax for the support of its schools.

We have not found it necessary to decide whether or not the long acquiescence by the State and the citizens of El Paso in the assumption by the city of the control of the public schools is such as to preclude an inquiry into the regularity of its action, in a suit brought directly to annul it. We merely decide, that, since the city became de facto and in effect a separate school district, it had the power by a vote of its taxpayers to authorize a levy of a tax to support its schools.

We answer the first question by saying, that under the facts certified we are of the opinion that the validity of the tax can not be successfully questioned in this action.

As to the second question we answer, that for the purpose of holding an election and levying the tax the city was in 1883 in legal effect a separate school district.

Our decision in this case seems to be in conflict with the ruling in the case of Conkling v. The City of El Paso, which was decided by the court who certify these questions, and in which a writ of error was refused by this court. Conkling v. El Paso, 44 S. W. Rep., 879; El Paso v. Conkling, 91 Texas, 537. The record having been returned to the Court of Civil Appeals, we can not say whether the cases are distinguishable or not. If not, the Court of Civil Appeals seem, by certifying the questions, to entertain doubts as to the correctness of their former ruling; and we are of opinion that if the questions be the same in the two cases, the ruling of that court and of this in the former case was error.