## FIRST NAT. BANK IN COLUMBUS, OHIO, v. CITY OF NORTH PLEASANTON et al.* (No. 7030.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 5, 1923. Rehearing Denied Jan. 9, 1924.)

1. **Municipal corporations** ⟳18—State only can question existence of corporation.

No one except the state can directly or indirectly question the existence of a municipal corporation, and when questioned by the state it must be by direct action.

2. **Municipal corporations** ⟳18—Assailing validity of warrants held unwarranted as collateral attack on incorporation.

Where upon the face of proceedings for incorporation of a city under Rev. St. arts.

1033–1069, everything was regular, and nothing indicated incorporation of part of an adjoining town therein, and city functioned, issued warrants for a bridge, which was built from proceeds, in action on warrants, the inhabitants could not repudiate the debt on the ground that the town was not incorporated, and that the warrants were issued without legal sanction; it being collateral attack on the incorporation.

3. **Municipal corporations** ⟳902—Purchaser of warrants not bound to have city surveyed.

Where city incorporated under Rev. St. arts. 1033–1069, and issued warrants for a bridge, good faith purchaser owed no duty to have city surveyed or to consult records to see if property of others had been invaded, and land not the property of the city appropriated.

4. **Municipal corporations** ⟳17—De facto corporation bound by its obligations.

Town attempting to organize as a city under Rev. St. arts. 1033–1069, *held* to be a de facto corporation, and bound by its obligations.

5. **Municipal corporations** ⟳902—Purchaser of warrants could presume proper incorporation of city.

Where a town attempted to organize as a city under Rev. St. arts. 1033–1069, and issued warrants from proceeds of which bridge was built, purchaser of warrants had right to act on presumption of proper incorporation.

6. **Municipal corporations** ⟳51—Receivership unwarranted.

Where town, in attempting to incorporate as a city under Rev. St. arts. 1033–1069, took no legal action under articles 1077–1079, to abolish its incorporation, receiver could not be appointed in action by the holder of warrants, as article 1080 provides for receivership only in cases where existence has been abolished in manner provided.

Appeal from District Court, Atascosa County; Covey C. Thomas, Judge.

Action by the First National Bank of Columbus, Ohio, against the City of North Pleasanton and others. Judgment for defendants, and plaintiff appeals. Reversed and remanded, with orders.

Davis & Long, of San Antonio, and R. R. Smith, of Jourdanton, for appellant.

Garnand & Hardy, of Jourdanton, for appellees.

FLY, C. J. This is a suit by appellant against the town of Pleasanton, its mayor, J. J. Harrison, its board of aldermen, John Van Wagner, H. F. Smith, S. E. Ricks, Rufe Holland, and C. Wilkins, and the city of North Pleasanton, L. B. Oliver, W. S. Smith, S. G. Porter, J. F. Martin, C. W. Ridnour, Aaron Davis, and W. L. Baird, to recover on certain city warrants issued by the city of North Pleasanton to create what was known as "special street and bridge improvement fund," which had been placed on the market, and had, in due course,

---

⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted February 27, 1924.

come into the hands or appellant for a valuable consideration. The petition is very voluminous, covering 42 typewritten pages, and we do not undertake to give even a synopsis of the allegations. Suffice it to say that we arrive at the conclusion that the allegations show that the town of North Pleasanton, which is situated to the northward of Atascosa creek, being desirous of increasing its importance and prestige, incorporated itself as a city under the provisions of title 22, c. 14, Revised Statutes of Texas; that in its incorporation it took in territory known as "West Side," south of Atascosa creek, which said territory is claimed by the town of Pleasanton as being a part of its territory, and is appropriating it to its own use and benefit. This claim brings the last-named corporation, with its officers, into this suit, as appellant alleges that its assumption of ownership over the "West Side" was preventing the payment of its claims against North Pleasanton. It seems that if "West Side" is abstracted from North Pleasanton it does not contain enough territory to form a city, and, if the inhabitants of the west side are not liable on the warrants, then the inhabitants on the north or east side of the creek claim that there was no incorporation, and consequently, although the people of east and west sides had a bridge built for their use and convenience across Atascosa creek, with money furnished by the purchase of their warrants, no one is liable, and the warrants will not be paid. That seems to be the gist and essence of more than 80 pages of pleadings. Appellant made a long prayer of nearly 4 typewritten pages, seeking, substantially, judgment for its debts as evidenced by the various warrants as against North Pleasanton, its officers and taxpaying citizens, asking for a writ of mandamus commanding such city officers to resume their official duties and to take proper measures to levy taxes and collect money to pay off the warrants; and in the alternative a receiver was sought in whose hands the affairs of the city would be placed, and who would levy taxes and get money and pay off the warrants. Appellant desired a tax lien to be placed on all taxable property in North Pleasanton for its benefit, and a judgment was sought against the town of Pleasanton and its officers for all of "West Side," and an injunction was sought to compel them to leave "West Side" and its people severely alone, and in addition appellant prayed "for all such general and special relief, in law and equity, to which it may be entitled in the premises as against defendants and each of them, as well as against the interveners herein and the taxpaying citizens in the city of North Pleasanton, whether resident or nonresident taxpayers," etc. The interveners to which reference was made are 31 inhabitants of North or East Pleasanton who sought to defeat appellant's claims.

A jury was waived, and the court, after overruling various and sundry exceptions to the petition, heard the testimony and rendered judgment that appellant take nothing by its suit, that the writ of mandamus and receivership be denied, and that the warrants and interest coupons sued on be decreed null and void, and duly canceled.

The brief of appellant covers 150 pages of printed matter, containing 74 assignments of error and 51 authorities. To treat each of the assignments exhaustively and read each authority would entail more labor than the time of this court would permit, and render the opinion more bulky than is desirable or necessary.

[1] It is the general rule that no one, except the state, can directly or indirectly question the existence of a municipal corporation, and, moreover, when the existence of such corporation is attacked by the state it can be done only in a direct action as distinguished from a collateral attack. McQuillin, Mun. Corp. vol. 7, Supp. § 158; Dillon, Mun. Corp. §§ 66, 355, 644; Brennan v. Weatherford, 53 Tex. 330, 37 Am. Rep. 758; Largen v. State, 76 Tex. 323, 13 S. W. 161; City of El Paso v. Ruckman, 92 Tex. 89, 46 S. W. 25; Crabb v. Celeste Ind. School District, 105 Tex. 194, 146 S. W. 528, 39 L. R. A. (N. S.) 601, Ann. Cas. 1915B, 1146; State v. Waller (Tex. Civ. App.) 211 S. W. 322; Floydada Ind. School Dist. v. Shipley (Tex. Civ. App.) 238 S. W. 1026, affirmed (Tex. Com. App.) 250 S. W. 159.

[2] Upon the face of the proceedings for the incorporation of the city of North Pleasanton everything was regular, and there was nothing to indicate that it had incorporated a part of the territory of an adjoining town. It functioned as a city and issued the warrants to build the bridge, and it was built with the proceeds arising from the sale of the warrants. The people of the community obtained full benefits from a bridge built with appellant's money, and now seek to repudiate the debt on the ground that the town was not incorporated, and the warrants were issued without sanction of law. It is the opinion of this court that appellees had no right or authority to assail the incorporation of North Pleasanton, and that the trial court should have sustained exceptions to the allegations attacking such incorporation. This is a collateral attack on such incorporation; but, even if directly made, appellees had no authority to make it. The cases of State v. Wofford, 90 Tex. 514, 39 S. W. 921; State v. Dunson, 71 Tex. 65, 9 S. W. 103; Buford v. State, 72 Tex. 182, 10 S. W. 401; State v. Larkin, 41 Tex. Civ. App. 253, 90 S. W. 915; Ewing v. State, 81 Tex. 172, 16 S. W. 872; and Judd v. State, 25 Tex. Civ. App. 418, 62 S. W. 544—cited by appellees, were instituted by the state, and consequently have no applicability to the facts of this case.

In the case of Pence v. Cobb (Tex. Civ.

App.) 155 S. W. 608, the charter carried on its face its own invalidity under the law, and consequently the incorporation was a nullity, and could be attacked by any one. The judgment in that case was reversed, and the cause remanded, and there is no record of what became of it, although it is known that it never was passed upon by the Supreme Court. If it can be construed into holding that any individual can collaterally attack a charter, which does not bear on its face evidence of its invalidity, then it will not be followed because in the face of Supreme Court decisions and all text-books.

[3] On January 17, 1917, the town council of the town of North Pleasanton adopted title 22, c. 1, Revised Statutes of 1911, in lieu of chapter 14, tit. 22, of the same statutes, that is, changed the corporation from a town to a city government. On March 26, 1917, the city issued 31 street and bridge improvement warrants in denominations of $250, with interest coupons attached. J. A. Neill entered into a contract with North Pleasanton to build a bridge, and each warrant was turned over to Neill and La Flower, and each of them transferred each warrant to bearer. The warrants recited that they were "issued for the purpose of evidencing the indebtedness due by said city of North Pleasanton, of Texas, under and by virtue of the Constitution and laws of the state of Texas, and in pursuance of an ordinance passed by the city council of said city of North Pleasanton on the 15th day of March, 1917." The warrants were purchased for value by appellant, without notice of any circumstance that could have rendered them invalid, and North Pleasanton got the bridge over Atascosa creek for the proceeds of the sale of the warrants. The utmost care was used by the bank, which is located in Columbus, Ohio, and it was induced by certain statements as to the financial condition of North Pleasanton, and by the assurances of Mr. Arlitt of Austin, who highly recommended the warrants, and who after thorough investigation found that the material for the bridge had been received and accepted by the city before the warrants were issued. Arlitt dealt in securities, and sold these to appellant. In December, 1918, the city began to neglect payment of the coupons, probably because it had been discovered that payment might be evaded. The record of the proceedings of the city council in connection with the warrants was examined by Judge J. T. Sluder, of San Antonio, and he expressed the opinion that the proceedings showed "lawful authority for the issue of said warrants under the laws of the state of Texas now in force." He also certified from an examination of one of the warrants that the issue was "valid and legally binding upon said city of North Pleasanton, and that all the taxable property in said city is subject to the levy of a tax to pay the same." Upon

all these assurances the Ohio bank, not contemplating repudiation or any technicalities to evade payment of the warrants, bought and paid for them. Appellant had no way of ascertaining that North Pleasanton may have invaded the preserves of its sister town, and captured some of its territory, if it did so. It did not become its duty to have the city surveyed or to consult the records to see if the property of others had been invaded and land not the property of the city appropriated. If the doctrine of honesty and good faith can apply to a municipal corporation, it should compel North Pleasanton to pay its debts for money which it has obtained and used on its improvements. It should not be allowed to repudiate its debts and wrong persons misled into investing in its securities duly executed to pay debts justly due for improvements made for its use and benefit. Slayton v. Panola County (D. C.) 283 Fed. 330; Macon County v. Shores, 97 U. S. 272, 24 L. Ed. 889; City of Tyler v. Jester, 97 Tex. 344, 78 S. W. 1058.

As held in the case last cited, promissory notes or warrants issued to pay outstanding debts of a city are not bonds within the meaning of statutes regulating the issuance of bonds, and such issuance was not the creation of a debt which required the levy of taxes to provide for interest and sinking fund. As said by the Supreme Court in that case:

"If it were held that a city could not make a binding contract, unless at the time it had revenue sufficient to discharge all of its current expenses, and that every person who should deal with it must do so at his peril, taking a chance of a deficit in revenue, it would be absolutely destructive of the power of every city in the state to carry on its ordinary governmental affairs, for it is well known that the business of a city is conducted upon the basis of credit and depends entirely upon the collection of taxes from time to time with the claims for current expenses running over from one month to another. We believe that such a contract, though not paid off during the year for which it was made, remains a valid debt against the city, which it may and should discharge out of the revenues for future years in excess of its current expenses."

It may be added in addition to that declaration that a repudiation of or failure to recognize a just debt not only is disastrous to the repudiator, but weakens or destroys the credit of every municipality in Texas. The principle as to the right of cities to issue warrants for the building of improvements is recognized in a number of Texas decisions. Lasater v. Lopez, 110 Tex. 179, 217 S. W. 373; Stratton v. Commissioners' Court (Tex. Civ. App.) 137 S. W. 1170; Cowan v. Dupree (Tex. Civ. App.) 139 S. W. 887; Commissioners' Court v. Nichols (Tex. Civ. App.) 142 S. W. 37; Allen v. Abernethy (Tex. Civ. App.) 151 S. W. 348.

[4, 5] North Pleasanton was a de facto corporation at least, and as such can be and

should be compelled to meet the obligations voluntarily assumed by it. No valid defense has been presented to the warrants, and honesty, justice, and truth demand the payment of debts contracted by the city. Appellant had the right to act on the presumption that the city was properly incorporated. Comanche County v. Lewis, 133 U. S. 198, 10 Sup. Ct. 286, 33 L. Ed. 604; American Salt Co. v. Heidenheimer, 80 Tex. 347, 15 S. W. 1038, 26 Am. St. Rep. 743; City of El Paso v. Ruckman, 92 Tex. 86, 46 S. W. 25; City of Carthage v. Burton, 51 Tex. Civ. App. 195, 111 S. W. 440; School District v. Denman (Tex. Com. App.) 222 S. W. 539.

[6] It is provided in article 1077, Revised Statutes, that cities chartered under the general law may abolish their corporate existence, and articles 1078 and 1079 provide the method by which that end may be attained. No legal action was taken by the corporation of North Pleasanton to abolish the municipality under the statute, and it is therefore still in existence. This fact would preclude the appointment of a receiver, as the statute provides for receiverships in cases where a city or town has abolished its corporate existence in the manner provided by law. Revised Statutes, art. 1080.

To summarize, the record does not show that North Pleasanton was not legally incorporated; second, if not regularly incorporated, the city was a de facto corporation, and bound in good faith to pay its debts; third, the good name of the state of Texas is involved in the repudiation of a just debt by any of its creatures, and, as the state as a whole pays its debts, and does not countenance repudiation, so public policy and the protection of the credit of the state demand that every legalized, authorized subdivision of the state should be compelled to repay money used by such subdivision to make public improvements.

The judgment of the district court is reversed, and the cause remanded, and it is ordered that the officers of North Pleasanton, who are holding over until their successors are duly elected and qualified, shall take necessary steps to levy a legal tax sufficient to pay the debt due to appellant, which debt is hereby decreed to be a valid and just claim against such corporation, and that appellees herein pay all costs in this behalf expended.