## GRISHAM v. TATE et al.

### No. 1032.

Court of Civil Appeals of Texas. Waco.
Jan. 15, 1931.

Rehearing Denied Feb. 12, 1931.

Bartlett & Peterson, of Marlin, and J. W. Spivey, of Waco, for appellant.

Terry Dickens, of Marlin, and C. D. Jessup, of Houston, for appellees.

ALEXANDER, J.

This was a suit instituted in the district court of Falls county by the appellant J. W. Grisham, as a taxpayer, against C. L. Tate, as tax collector of Falls county, and J. B. Landrum, county judge, and Frank Peacock, F. A. Tate, W. H. King, and B. H. Brunner as commissioners of said county, seeking to enjoin the collection of taxes levied in new road district No. 4 of Falls county for the purpose of paying off certain bonded indebtedness in said district. The plaintiff alleges that on or about the 9th day of September, 1929, the commissioners' court of Falls county created and established new road district No. 4 in said county, and that thereafter on petition properly presented the commissioners' court ordered an election in said district to determine whether or not it should issue road bonds on the faith and credit of said district in the sum of $446,000. The plaintiff further alleges that at the election for the issuance of said bonds said issue carried and the commissioners' court passed an order authorizing the issuance of said bonds; that the court has levied a tax on all property located in said proposed district for the purpose of liquidating said bonds and is now seeking to collect such taxes. The plaintiff alleges that he is a taxpayer owning property in said proposed district and that such taxes will be collected unless the injunction is granted. The plaintiff further alleges that said district is not properly defined and there is not sufficient description of the metes and bounds of said district to determine the area of the district attempted to be created by the order aforesaid; that said field notes and calls as described in the order creating said district are inaccurate, unintelligible, and it is impossible for a surveyor or other person to go according to said field notes and survey said lands embraced in that part of Falls county which is now said to be road district No. 4, and especially are the field notes incorrect in that there is a line missing from said field notes from the southwest corner of the Rice Adkins tract to the southwest corner of the T. F. Turner tract, and by reason of said line being missing in the survey of said area said district is indefinite and the field notes thereof do not close, and that by reason thereof said bonds are void and the commissioners' court has no right to collect such taxes.

The trial was had before the court without a jury, and at the conclusion of the evidence judgment was entered for the defendants, and the plaintiff appeals.

At the threshold of the case the appellees, by general demurrer, challenge the right of the appellant as a taxpayer to maintain the suit. It is the contention of the appellees that the road district in question is a quasi municipal corporation acting under color of law; that the suit in question is a contest on the legal existence of such district, and that its legality can only be determined by a suit brought for that purpose in the name of the state or by some one under the authority of the state, and that the plaintiff, whose only interest is that of a taxpayer, cannot maintain the suit for the purpose of annulling the district; and further that if the suit is not for the purpose of testing the legal existence of the district that this is a collateral attack thereon, and that the plaintiff has no right to collaterally attack the existence of the district in this suit.

Chapter 16, 39th Legislature, First Called Session (Acts 1926, page 23 [Vernon's Ann. Civ. St. arts. 752a to 752w, 752a note]), provides for the establishment of road districts in a county by the commissioners' court of the county entering an order declaring such road district established and defining the boundaries thereof. Section 20 of the same act (Vernon's Ann. Civ. St. art. 752r) provides as follows:

"Any road district, or any political subdivision accepting the provisions of this Act, shall be a body corporate and may sue and be sued in like manner as counties."

 It has been held that a road district when so created is a quasi public corporation. Tyree v. Road District No. 5, Navarro County (Tex. Civ. App.) 199 S. W. 644; Maroney v. Feagin (Tex. Civ. App.) 264 S. W. 105. It is a well-established rule that when the creation of a public corporation or quasi public corporation is authorized by statute and a corporation has been organized under color of such authority, its corporate existence cannot be inquired into by the courts in a collateral attack. It is also the rule that the validity of such incorporation can only be determined in a suit brought for that purpose in the name of the state or by some individual under authority of the state who has a special interest which is affected by the existence of the corporation. City of El Paso v. Ruckman, 92 Tex. 86, 46 S. W. 25; Graham v. Greenville, 67 Tex. 62, 2 S. W. 742; Kuhn v. City of Yoakum (Tex. Com. App.) 6 S.W.(2d) 91; Crabb v. Celeste Ind. School District, 105 Tex. 197, 146 S. W. 528, 39 L. R. A. (N. S.) 601, Ann. Cas. 1915B, 1146; Brennan v. City of Weatherford, 53 Tex. 330, 37 Am. Rep. 758; Snyder v. Baird Independent School District (Tex. Civ. App.) 109 S. W. 472; Troutman v. McClesky, 7 Tex. Civ. App. 561, 27 S. W. 173. The reason for such rule is apparent, for if each taxpayer or interested party should be permitted to maintain a separate suit for the purpose of con-

testing the legality of the corporation, one complainant might prosecute his suit to effect and have the corporation declared illegal as to him, while another complainant might not be so successful and in consequence the corporation would have a legal existence as to one taxpayer, while it would be illegal as to another.

██ The rule, however, is not without its exception. Where there is no law authorizing the creation of such a corporation, or where the law under which it purports to exist is unconstitutional, or where the attempt to comply with the provisions of the law authorizing such creation is so utterly lacking or defective as to render the attempt to create such a corporation void, the right of such corporation to exist may be challenged by any party whose interest is directly affected thereby, especially where the purported corporation has not existed for a sufficient length of time to become a de facto corporation.

In the case of Parks v. West, 102 Tex. 11, 111 S. W. 726, 729, the Supreme Court said:

"It is said that it is essential to the doctrine that there be in existence a law in virtue of which such a corporation as that the party to the litigation claims to be might legally exist and 'that the rule is the same where there is only an unconstitutional law.' Even this qualification of the rule seems to be subject to exceptions applicable in cases where the attacking party sustains certain relations to the alleged corporation or has no right of his own to be protected by allowing the inquiry."

The court in the same case, however, said:

"But be that as it may, the attack of the plaintiffs is not merely upon the corporate existence of the district, but is directed against the power of the defendants to lay burdens on their property and subject them to the payment of taxes. Surely they have the right to do that although the reason they assign for the lack of power may also go to the right of the district to exist under the Constitution. Certainly a property holder has the right to say to the court that he is protected by the Constitution from the imposition of a tax by persons to whom the Constitution, in effect, denies such power. If the rule relied on by defendants should preclude plaintiffs from making the contention now, when and in what way could they make it? So far as we can see, the rule would equally apply to an effort to resist the collection of the tax by suit or otherwise. The consequence to which the contention leads is that, while the Constitution does not permit such a school district to exist and levy taxes, it may yet do both and force property owners to pay until the officers of the state see fit to intervene. Useful and convenient as is the doctrine invoked, we cannot give our assent to an application of it, which would

deny to the plaintiffs the protection sought of their property rights."

It will be noted, however, that the court there had under consideration a case wherein the law under which the corporation purported to have been created was unconstitutional. The Legislature had passed an act authorizing the creation of a school district composed of territory out of two or more counties and the Mertens independent school district had been so created. The court held that the Constitution did not authorize the enactment of such a statute. The corporation did not have a de facto existence, and its incorporation therefore was absolutely void and as such was subject to attack in any action in which the right of a citizen was involved. The statement from that court last above quoted was therefore not necessary to a disposition of that case. Coffman v. Goree Independent School District (Tex. Civ. App.) 141 S. W. 132; Huggins v. Vaden (Tex. Civ. App.) 259 S. W. 204, at page 206; Kuhn v. City of Yoakum (Tex. Com. App.) 6 S.W. (2d) 91.

This same court had previously said in the case of City of El Paso v. Ruckman, 92 Tex. 86, 46 S. W. 25, 26:

"The rule is well established that when the creation of a public corporation—municipal or quasi municipal—is authorized by statute, and a corporation has been organized under the color of such authority, its corporate existence cannot be inquired into by the courts in a collateral proceeding. The validity of the incorporation can only be determined in a suit brought for that purpose in the name of the state, or by some individual under the authority of the state, who has a special interest which is affected by the existence of the corporation."

In the case at bar there is no contention that the statute does not authorize the creation of the district in question, nor that the law under which it purports to act is unconstitutional. The only objection is to the procedure followed in the creation of the corporation.

[redacted] Was the attempt to create the road district so defective as to be utterly void? The only complaint is that the district is not properly defined in that the field notes do not close. The proceedings by which the district was created and the bonds voted and issued otherwise appear to be regular. There is only one place where the field notes do not close. The description starts at a place on the Brazos river, and after proceeding up the river to a given point, the field notes follow definite lines until they reach the northwest corner of the Rice Adkins tract in the north line of the Biscamp Survey. The calls thereafter are as follows: "Thence S. 30 E. with said Adkins W. line 1085 vrs. to the F. T. Turner S. W. corner in the E. line of the Burchard Survey." From thence the field notes follow definite lines to the place of beginning. The F. T. Turner land lies immediately west of the Adkins tract, and if we start at the N. W. corner of the Adkins tract and run S. 30° E. with said Adkins west line 1,085 varas, we arrive at the S. E. corner of the F. T. Turner land instead of the S. W. corner of said tract as is called for in the field notes. It is contended therefore that there is no definite call by which the field notes pass from a point in the W. line of the Adkins tract to the S. W. corner of the Turner tract. The question therefore arises: "Are the field notes sufficiently definite to enable those interested to locate the property intended to be included in the district?" By supplying one additional word, to wit, "Thence," the field notes will close and the description will be rendered complete. If this word be supplied the notes will then read: "Thence S. 30 E. with Adkins W. line 1085 vrs. *Thence* to the F. T. Turner S. W. corner in the E. line of the Burchard Survey." The addition of this word will not change the course of any line in the original field notes and will not create any additional corners or touching points. The field notes as originally drawn called for the line to run from the N. W. corner of the Adkins tract with his W. line S. 30° E. 1,085 varas. They also call for Turner's S. W. corner. It is evident that the commissioners' court intended that the line should run from the given point in the W. line of the Adkins tract to the S. W. corner of the Turner tract. We may therefore safely assume that the court intended to follow a straight line in connecting these two points. In fact, no other conclusion can safely be drawn. In arriving at the intention of the parties, it is the duty of the court to take a common sense view of their acts. The courts should aid construction rather than become agencies of destruction. In order to accomplish the intention of the parties, we are authorized to supply the missing word. In 43 C. J. 107, under the heading, "Municipal Corporations," it is said:

"A description is not void for uncertainty where it is not so uncertain as to render impossible the ascertainment of the boundaries intended to be established and the territory intended to be included therein. Also a misdescription of a boundary of a municipality is not fatal where other courses, distances, and descriptions show with reasonable certainty the boundary intended. A description sufficient for a deed is sufficient to describe the boundaries of a municipal corporation."

In 18 C. J. 185, it is said:

"Again it has been determined that an omission of part of the boundaries or calls is not fatal to the validity of the deed, where such boundaries or calls can be supplied or the description be rendered certain," citing Montgomery v. Carlton, 56 Tex. 431; Fortenberry v. Cruse (Tex. Civ. App.) 199 S. W.

523; Noland v. Weems (Tex. Civ. App.) 141 S. W. 1031; Wells v. Heddenberg, 11 Tex. Civ. App. 3, 30 S. W. 702.

Our courts have sustained description of land where one of the calls has been left out or where there is an entire omission of a line necessary to make the survey close. Brown v. McKee, 80 Tex. 594, 16 S. W. 435; Tompkins v. Thomas, 54 Tex. Civ. App. 440, 118 S. W. 381. The field notes may be reversed in order to make the survey close. William Carlisle & Co. v. King, 103 Tex. 620, 133 S. W. 241. In Wilson v. Brown (Tex. Civ. App.) 145 S. W. 639, the validity of a school district was attacked on account of insufficient description of the territory included therein. The field notes called for the line to run to the S. E. corner of the F. T. Roberts Survey at R. L. Brown's N. E. corner; thence in a southerly direction for a certain distance. R. L. Brown's N. E. corner did not coincide with the S. E. corner of the F. T. Roberts Survey. It was intended that the line should run to R. L. Brown's N. E. corner. The map drawn in connection with the field notes of the district and recorded as provided by law used the S. E. corner of the Roberts Survey as the turning point. The court heard evidence and found that it was the N. E. corner of the R. L. Brown tract that was intended by the surveyor and that the defect in the field notes was not sufficient to invalidate the district. A similar holding was made in the case of Parker v. Harris County Drainage District No. 2 (Tex. Civ. App.) 148 S. W. 351.

As evidence of the intention of the commissioners' court as to the location of the line in question, the commissioners' court, after the establishment of the district and the voting of the bonds, entered an order on its minutes nunc pro tunc in which it was provided that the disputed line in question should run as follows: "Thence S. 30 E. with said Adkins W. line 1085 vrs. to F. T. Turner S. E. corner; thence S. 60 W. to F. T. Turner's S. W. corner in the East line of the Burchard Survey." On the trial of this case, evidence was introduced showing that it was the intention of the commissioners' court in the creation of the district to run the line as above set out. Moreover, the order for the bond election after describing the territory included therein as in the original order creating the district further recited: "Attached hereto and made a part hereof is a map of said new road district No. 4 of Falls County, Texas, with the boundary lines thereof as hereinbefore described distinctly marked thereon." The evidence shows that such a map had been made and that the field notes of the district as marked thereon call for the line in question to run with Adkins' west line to the S. E. corner of the Turner tract and thence with the south line of the Turner tract to the S.

W. corner thereof. It is true that this map was not published nor posted in connection with the bond election, but it does furnish evidence of the intention of the parties and of the true location of the line of the district. The appellant's land is not located near the disputed line, but is clearly included within the district.

The defect in the field notes of the district constitute a mere irregularity in the creation of the road district and do not of themselves render the incorporation void. Wilson v. Brown (Tex. Civ. App.) 145 S. W. 639, at page 641.

The judgment of the trial court is therefore affirmed.