COHEN et al. v. CITY OF HOUSTON et al.
(No. 361.)

(Court of Civil Appeals of Texas. Beaumont. June 6, 1918. Rehearing Denied Oct. 9, 1918.)

1. APPEAL AND ERROR ⬅1099(1)—LAW OF THE CASE.

Express holdings on former appeal that limits of city were legally extended, and that even were this not so there was a de facto municipality which could be attacked only by the state, foreclose the questions.

2. CONSTITUTIONAL LAW ⬅63(2)—POWER OF LEGISLATURE—CHANGE BY CONSTITUTION.

Power to extend city limits, previously vested in the Legislature, could, by amendment of the Constitution, be vested in the voters of the city.

3. CONSTITUTIONAL LAW ⬅65 — POWER OF LEGISLATURE—DELEGATION TO VOTERS—MUNICIPAL BOUNDARIES.

Power of Legislature to extend city limits could by statute be delegated to the voters of the city.

4. MUNICIPAL CORPORATIONS ⬅34—EXTENSION OF LIMITS—SUBMISSION TO VOTE—CURATIVE ACTS.

If the voters of a city had not been given power to extend city limits by amending its charter, without vote of the inhabitants of the outlying territory required by Rev. St. 1911, art. 781, then such an attempt, subsequent to enactment of Acts 33d Leg. c. 147 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 1096a–1096i), was rendered effectual, by Acts 34th Leg. c. 94, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 1096j), and Acts 35th Leg. c. 30, § 1 (Ver-

non's Ann. Civ. St. Supp. 1918, art. 1096k), in terms validating attempted amendment of charter in such a city at such time.

Appeal from District Court, Harris County; Henry J. Dannenbaum, Judge.

Action by H. F. Cohen and others against the City of Houston and others. From an adverse judgment, plaintiffs appeal. Affirmed.

See, also, 176 S. W. 809.

Wilson, Dabney & King and Wm. H. Wilson, all of Houston, for appellants. J. C. Hutcheson, Jr., and W. J. Howard, both of Houston, for appellees.

BROOKE, J. This is an action filed by H. F. Cohen, Wm. H. Wilson, Mrs. C. W. Walker and husband, J. C. Walker, B. Meineke, Miss Sallie Conner, Miss Susan Conner, W. T. Palfrey, J. J. Settegast, M. P. Geiselman, B. C. Dissen, and H. O. Schneider, plaintiffs, against the city of Houston and Ben Campbell and others, sued in their official capacity as mayor and aldermen of the city of Houston, setting up that the plaintiffs were the owners of real estate situated in lands outside of the city of Houston and in the neighborhood thereof, and that the voters in the city of Houston had, by an election held in said city, undertaken to make the said outlying lands a part of said city, and that said city was proceeding to assess, levy, and collect the taxes of the city of Houston on said outlying property belonging to plaintiffs, and praying an injunction against the collection of any city taxes off of said property, and for other relief.

General demurrers were sustained by the court to said petition, and also a general demurrer, on the ground that the question of the liability of said property to pay taxes to the city of Houston could be raised only by the state of Texas in a quo warranto proceeding. The plaintiffs declined to amend, the suit was dismissed by the court, and this appeal was taken.

The case was originally filed October 14, 1914. Plaintiffs' second amended original petition was filed March 9, 1917, and the following is the prayer of said petition:

"Wherefore plaintiffs pray that this court enter its judgment declaring the invalidity and nullity of the proceedings herein attacked, and removing the cloud from the title of these plaintiffs herein described, and enjoining and restraining the collection of any taxes of the city of Houston off of said territory, and off of property therein situated, and particularly of the lands of these plaintiffs situated within said territory, and the doing of any other act by the city of Houston whereby it shall claim or assert that the said described lands or any part of them are a part of the city of Houston, and for all other relief, both general and special, legal and equitable, to which the plaintiffs may be entitled."

The defendants filed, along with other pleadings, various exceptions to said pleadings, including, among others, a number of general exceptions, each stating the ground on which it was urged.

The court, on March 14, 1917, entered its judgment, and decree that the defendants' general demurrers Nos. 5, 6, 7, and 8 to the allegations of plaintiffs' petition be sustained, and that defendants' general exceptions Nos. 9, 10, 11, 12, 13, 14, 15, 16, 18a, and 18d, to the effect that the plaintiffs, as property owners and residents of the annexed territory, were without legal authority to maintain the action, and that same could only be maintained by the state in a quo warranto proceeding be sustained, and that all the remainder of defendants' exceptions to plaintiffs' said amended petition be overruled, to which the defendant excepted, and thereafter, the case being called for trial, plaintiffs by their counsel declined to amend their pleadings, upon which the court dismissed the action, to which judgment the plaintiffs excepted and gave notice of appeal.

The case as originally filed was not only to enjoin the taxation of property within the attempted annexation, but was also to enjoin the issuance of bonds in the sum of $4,500,-000 against the city of Houston. This case went up to the Court of Civil Appeals at Galveston heretofore (176 S. W. 809), and that court held that the temporary injunction be refused.

The assignment of error as presented is:

"The court erred in sustaining the general demurrer to plaintiffs' petition, because that the citizens of Houston held an election among the inhabitants of said city, and undertook to annex outlying territory, a part of Harris county, and its population, to said city equal in area to the true limits of the city, and although as much as two-thirds of this territory so sought to be annexed consisted of agricultural or of pasture land, or of woodland, or of other land which was not in any sense urban land, or needed for any city purpose or use, and because the authority contained in the Constitution was to adopt or amend the charter of a city of more than 5,000 inhabitants, and because such agricultural and pasture and other nonurban land was not, within the sense of the word as used in the Constitution, or in the laws, any part of a city, or authorized to be made such by any subordinate body or community, that in so far as the voters of Houston undertook to incorporate said rural property into the city of Houston they were acting beyond the authority contained in the Constitution itself, or in any of the laws, and that hence, so far as they undertook to incorporate said agricultural, pasture, and other nonurban land into the city of Houston, their action was null and void, without any authority, or color of authority, in the law, and wholly ineffective for any purpose; and, being void to that extent, the whole attempted extension of the limits is null and void, since the courts possess no power to make an extension of the limits of Houston in the absence of a lawful extension made by some body or community having power to do so."

The proposition under this assignment is:

"The authority given by the Constitution is that 'cities having more than five thousand inhabitants may, by a majority vote of the qualified voters in said city, at an election held for that purpose, adopt or amend their charters.' The voters of a city, by virtue of this grant to adopt or amend a charter of said city, are not given unlimited power of legislation to extend incorporation over outlying territory and pop-

ulation. A necessary limitation on the powers granted is contained in the term 'cities' and its definition. The judicial decisions of Texas give to the word 'city,' when used in such connection, a definite and fixed meaning. It means a collection of inhabited houses. The term carries with it the idea of a considerable aggregation of people, living in close proximity. Defined by what it is not, in the Texas law a city population is distinguished from a rural population, which is understood to signify a people scattered over the country, and engaged in agricultural pursuits, or some similar vocation requiring a considerable territory for its support. A section of country so inhabited cannot be called a city, nor treated as a part of a city, without doing violence to the meaning ordinarily attached to that word. Where any considerable amount of agricultural, grazing, or timber land not used for, or susceptible of, city use is added to a city by the vote of a new charter to such city by its qualified voters, such annexation of timber, grazing, and agricultural lands is void, and the whole annexation is void; for there is no power in the courts to create an addition to the city less than that which has been attempted, but which is ineffective and void, because of the absence of any authority to make the particular extension."

On the other hand, it is contended that appellants' first assignment of error complains of the overruling of the demurrer because it involves the holding that the majority of the voters of the city of Houston, at an election held for that purpose, could amend the charter of said city, so as to extend its limits to include, together with other territory, certain agricultural, pasture, and other nonurban lands.

In the case of Cohen v. City of Houston, reported in 176 S. W. 809, the court discussed the Acts of the 33d Legislature (chapter 147, Vernon's Sayles' Annotated Civil Statutes 1914, arts. 1096a–1096i inclusive), which were adopted to put into effect the amendment to the Constitution, art. 11, § 5, which authorized cities to adopt or amend their charters, but provided that no such charter should contain any provision inconsistent with the Constitution of the state or the general law, which act gave to a city adopting its own charter under that amendment power to fix boundary limits, providing for the extension of boundary limits and the annexation of additional territory, and held that the act superseded, in so far as such cities were concerned, Revised Statutes 1911, art. 781, which requires a vote of the inhabitants of outlying territory before the same can be annexed to a city, so that a provision of the city charter, authorizing it to extend its boundaries to include adjacent territory without vote of the inhabitants of such territory, does not conflict with a general law.

In this case we quote from the opinion of the Galveston Court of Civil Appeals as follows:

"We shall first consider the contention of appellants to the effect that the extension of the city limits so as to include a larger area of outlying territory was illegal and void.

"As has been hereinbefore shown, the special act of 1907, granting a charter to the city of Houston, defined the boundaries thereof as four miles square, of which the center of the court-house square, in Harris county, in the city of Houston, should be the center. At the time of the passage of the special act no power was lodged in any incorporated city in this state by general law by which it could, in any manner, extend its boundaries, except in the manner prescribed by article 574 of chapter 10, tit. 18, Revised Statutes 1895 (article 781, Revised Statutes 1911), which, in part, reads as follows:

"'Whenever a majority of the inhabitants qualified to vote for members of the state Legislature of any territory adjoining the limits of any city, incorporated under or accepting the provisions of this title, to the extent of one-half mile in width, shall vote in favor of becoming a part of said city, any three of them may make affidavit to the fact, to be filed before the mayor, who shall certify the same to the city council of said city. The said city council may by ordinance receive them as part of said city; from henceforth the territory so received shall be a part of said city.'

"In 1912 an amendment of section 5, art. 11, of the Constitution of Texas, commonly known as the 'Home Rule Amendment,' was adopted, which reads as follows:

"'Cities having more than 5,000 inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature, and providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the state, or of the general laws enacted by the Legislature of this state.'

"Appellants contend that this provision of the Constitution, expressly prohibiting the insertion in a city charter of any provision inconsistent with the general laws, was a direct prohibition against the city of Houston to provide in its charter, by amendment, for the extension of its boundaries in any manner or over a greater area than as provided by general law; and that as the manner of the extension of boundaries and the area over which such boundaries might be so extended were prescribed by general law, viz. article 781, Revised Statutes of 1911, the attempted extension by the city in any other manner than that prescribed in said article was illegal and void.

"We shall not pause to determine whether the article quoted applies to the manner of extending the boundaries of cities incorporated by special act of the Legislature. It will be noted that title 18, Revised Statutes of 1895, relating to cities and towns, provides the method by which they may be incorporated, and prescribes their powers and the duties of its officers. It will be observed that the article quoted provides the method by which territory adjoining the limits of a city 'incorporated under or accepting the provisions of this title' may become a part of such city. It may be that a city incorporated by a special act, and not under the general laws, which should, by an amendment to its charter, enlarge its boundaries, should not be controlled by the provisions of article 574, which prescribes the manner in which a city incorporated under the provisions of title 18 may acquire additional territory, and that such an amendment would not be inconsistent with any general law of the state that is applicable to such a city. But this is a question that is not necessary for us to now decide. But if we should assume that article 574 was the only general law which prescribed the method by which a city of either class might extend its boundaries, then we think that any city, whether incorporated by special charter or under the general law, would be bound thereby, and that any provision of a city charter or of an ordinance which undertook to provide a different means of extending the city limits than that therein provided would

be inconsistent therewith, illegal, and void. But is the article in question the only general law upon the subject? In 1913, before the adoption by the city of Houston of the amendment to its charter whereby its boundaries were extended, the Legislature adopted an enabling act to put into effect the above-quoted amendment to the Constitution (Acts 1913, p. 307), wherein it is provided:

"That by the provisions of this act it is contemplated to bestow upon any city adopting the charter or amendment thereunder the full power of local self-government, and among the other powers that may be exercised by any such city the following are enumerated for greater certainty: * * * The power to fix boundary limits of said city, to provide for the extension of said boundary limits, and the annexation of additional territory lying adjacent to said city, according to such rules as may be provided by said charter.'

"This act was in full force at the time the city of Houston adopted the amendment to its charter extending its boundary limits and annexing the additional territory. Being a general law, it superseded article 574 (article 781, R. S. 1911) as applied to cities which, under the home-rule amendment, had adopted or amended its own charters, and the amendment to the charter by which the city limits were extended was not only not inconsistent 'with the Constitution of the state or of the general laws enacted by the Legislature,' but in harmony with the general law above referred to as the 'Enabling Act.'

"Appellants contend that the adoption by the city of the amendment to its charter, whereby a large section of the adjoining territory was annexed, is, in its essence, the adoption of a charter and the erection of a new city, which consisted of Houston as formerly bounded and the new limits, and they contend, in this connection, that the charter could not be adopted under the terms of the Constitution, unless an election were held within the limits of the whole city, both the old limits and the new; and that the home-rule enabling act of the Legislature made no provision for holding such an election. They argue, in this connection, that to erect and create a territory into a municipal corporation, without taking an election of the inhabitants of such territory to determine their consent, is an act which can be done only by the Legislature by virtue of its sovereign legislative authority, and that such authority cannot be delegated by the Legislature to third persons. We think it is sufficient to say, in answering this contention, that the Legislature not only may originally fix the limits of the corporation, but it may, in the absence of any constitutional restriction, authorize the annexation of additional territory; and this without the consent, and even against the remonstrance, of the majority of the persons residing in the corporation or in the annexed territory. 1 Dill. Mun. Corp. (5th Ed.) pp. 615, 617; Graham v. City of Greenville, 67 Tex. 62, 2 S. W. 742. In the case cited it is said that the power of the Legislature to extend the limits of a city so as to include adjoining territory is not restrained by the Constitution. It follows that as the Legislature can delegate its power to extend the corporate limits so as to annex additional territory without the consent, and even over the remonstrance, of a majority of persons living therein; and that as the Legislature has so delegated its power to the city of Houston, as we have heretofore endeavored to show, its act in so annexing the new territory is valid, whether it be regarded as extending the corporate boundaries only, or the erection or creation of a new city.

"And it is no constitutional objection to the exercise of this power of compulsory annexation that the property thus brought within the corporate limits will be subject to taxation to discharge a pre-existing municipal indebtedness, since this is a matter which, in the absence of special constitutional restrictions, belongs to the Legislature to determine. 1 Dill. Mun. Corp. p. 617.

" * * * It is shown by the testimony that after the amendment of the charter of the city of Houston, extending the boundaries, the city, acting as a city within its new boundaries, assumed and exercised governmental control over both the old and the new territory, performing its duties toward all the inhabitants thereof, and exacting of all the people therein that need of duty owing by a people to the local government; and if the limits were unlawfully extended, and the added territory unlawfully annexed, nevertheless the corporation, extending throughout the entire territory, was a de facto municipal corporation, and, being such, was not subject to the attack made against it by private citizens, the plaintiffs in this case; for this can only be done by quo warranto in behalf of the state. In Graham v. Greenville, 67 Tex. 69, 2 S. W. 742, the Supreme Court expressly declared that, whether the boundaries of a city had been extended improperly or not, the question could not be raised in a collateral proceeding, but could only be taken advantage of by the state in a direct proceeding.

"In City of El Paso v. Ruckman, 92 Tex. 89, 46 S. W. 25, our Supreme Court said: 'The rule is well established that when the creation of a public corporation, municipal, or quasi municipal, is authorized by statute, and a corporation has been organized under the color of such authority, its corporate existence cannot be inquired into by the courts in a collateral proceeding. The validity of the incorporation can only be determined, in a suit brought for that purpose in the name of the state or by some individual under authority of the state, who has a special interest which is affected by the existence of the corporation.'

"In Parker v. Harris County Drainage District, 148 S. W. 351; in which the legality of the incorporation of a drainage district was attacked by individuals, this court, speaking through Associate Justice Reese, said: 'It is a firmly established doctrine that when the law provides for the creation of such districts by the action of any public body, as the commissioners' court in the present drainage law, the validity of such action in the creation and organization of such districts cannot be questioned except by a direct proceeding in quo warranto, at the suit of the state, for mere irregularities in, or failure to comply with, the prescribed procedure.'

"In Carthage v. Burton, 51 Tex. Civ. App. 195, 111 S. W. 440, this court gave the following as the correct rule: 'Even if a municipality has been illegally constituted, the state alone can take advantage of the fact in a * * * proceeding instituted for the purpose of testing the validity of its charter. When the question arises collaterally the courts will not permit its corporate character to be questioned, if it appear to be acting under color of law and recognized by the state as such.' See, also, Gibbons v. Ross, 167 S. W. 21.

"It seems clear to us that if the extension of the boundaries of the city of Houston, in the manner and under the authority shown, has not resulted in creating a de jure corporation coextensive with the boundaries defined in the amended charter, it has certainly created a de facto one, which is exercising all the functions of city government throughout such limits, with the consent and acquiescence of the state, and under its authority; and the question being political, and not one of property, a court of equity will not interfere at the instance of a citizen, for the matter is one to be determined, if at all, by the state in a suit of quo warranto and not otherwise."

[1] In the opinion above it was not only expressly held that the limits, the extension of which are complained of here, were legally extended, but if they were not the facts alleged by defendants here showed a de facto municipality, and that this suit constituted such an attack upon it as only the state had authority to make.

It is true that the court in its opinion stated that there was another ground upon which the refusal of the court to grant the injunction should be sustained, namely, the doctrine of the "balance of convenience"; but this did not lessen as authority the other express holdings that the limits were legally extended, and that such suit could be maintained by the state only. The Supreme Court refused a writ of error without comment. We are of opinion that the questions raised by appellants upon this appeal are therefore foreclosed by the decision in the case of Cohen v. City of Houston, 176 S. W. 809.

[2, 3] Appellants base their contention upon the holding in certain cases involving the boundary of cities incorporated under the general law. They admit, however, that the Legislature, by express enactment, could amend the charter of the city of Houston so as to include adjoining territory, regardless of the question whether it was urban land or agricultural land. This they say was by reason of the sovereign legislative power resting in the Legislature. Norris v. Waco, 57 Tex. 635. But the Constitution of Texas, by the article referred to, delegates to a majority of the qualified voters of every city of more than 5,000 inhabitants the right to exercise a power that theretofore rested in the Legislature. The power of the people of the state, through a constitutional amendment, to vest in the voters of a city the right to exercise a power concerning the extension of its limits that had theretofore vested in the Legislature, will not be questioned. So, then, if the sovereign power of the Legislature that enabled it to erect grazing and agricultural and other nonurban lands within the limits of a city has by said constitutional amendment been vested in the voters of said city to be exercised by them concurrently with the Legislature or to the exclusion of the power formerly vested in the Legislature, how can it be said that the fact that a portion of the land included within the limits as extended was nonurban in its character have any bearing upon the question of the validity of the extension of such limits? The power of the voters above referred to, to so extend the limits, was derived from sovereignty itself. But, if this were not so, we think there is no restriction, constitutional or otherwise, that operates against the Legislature delegating to the majority of the voters of such city the right and power to exend the city limits in the manner complained of by the above assignment. Blessing v. City of Galveston, 42 Tex. 659. The power above referred to was delegated to said voters by the enabling act above cited. Acts 33d Legislature, page 310.

[4] Again the Legislature by the validating acts expressly extended the limits of the city of Houston so as to include the land mentioned in the above assignment. Chapter 94, Acts 34th Legislature, § 1, p. 148 (Vernon's Ann. Civ. St. Supp. 1918, art. 1096j), provides that each charter, and each amendment to a charter, and each act of incorporation, adopted by the qualified voters of the cities of Ennis, Marshall, Houston, El Paso, Dallas, Beaumont, Waco, McKinney, Terrell, Galveston, Mineral Wells, Sweetwater, Wichita Falls, San Antonio, Brownwood, Orange, Belton, and Cleburne, respectively, since the enactment of chapter 147, p. 307, of the Acts of the Regular Session of the Thirty-Third Legislature, and filed in the office of Secretary of State, be, and the same are hereby, validated, and are declared to be in as full force and effect the same as if each had been enacted by the Legislature and approved by the Governor.

The act of October 16, 1917, c. 30, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 1096K), is as follows:

"That each charter and each amendment to a charter, adopted by any city of more than five thousand inhabitants in this state, or where such city has amended or attempted to amend or adopt such charter, since the enactment of chapter 147, Acts of the Regular Session of the Thirty-Third Legislature, 1913, and all proceedings had with reference thereto, are hereby validated, and are hereby declared to be in full force and effect, the same as if adopted in strict compliance with the requirements of said chapter 147, Acts of the Thirty-Third Legislature, and this act shall take effect and be in force from and after its passage."

Prior to the date of these acts, the charter of the city of Houston had been so amended as to include the land referred to in the above assignment. So the effect of said acts was to expressly establish the boundaries of the city of Houston so as to include the said land; for it will be presumed that the Legislature had knowledge of the facts and conditions concerning which it undertook to legislate. It follows, then, that if the power to extend the limits in the manner complained ed of had not, by reason of the home rule amendment to the Constitution, become legally vested in a majority of the voters of the city of Houston, who enacted the charter amendment of 1913, establishing the limits complained of, such power remained in the Legislature, and it by such validating acts exercised such power. Article 781, R. S., of course operated as no limitation upon the effect or validity of the acts; for the Legislature had the power to modify, repeal, or enact exceptions to said article 781, and in our judgment it cannot be said that the validating acts are retroactive, and for that reason not effective, for they impair no vested right under existing law, create no new obligation, nor do they impose any new duty. It may be said, as we understand, that the power of the Legislature to legislate con-

cerning the extension of the city limits had been withdrawn from it by section 5, art. 11, of the Constitution (home-rule amendment), and therefore it would have had no power to extend the limits of the city of Houston in the first place, and, that being true, had no power to validate the limits fixed by a majority of the voters of said city at the election held for that purpose in 1913; and in their brief they say that, if the extension of the city limits had the same force as if it had been enacted by the Legislature and approved by the Governor, it would have no force at all, for the power of the Legislature to pass special laws in the charter of such cities as Houston on the amendment thereof had been finally withdrawn by the amendment of section 5, art. 11, of the Constitution.

As we view the matter, appellants are placed in a position where they must accept one of two alternative propositions—either the power to extend the limits under consideration was by the home-rule amendment vested in the majority of the voters of the city of Houston, who exercised such power by the election held for that purpose in 1913, or such power remained where it had rested in the Legislature, which exercised it by said validating acts and established the same limits.

As we view the brief of appellees, they each present, in one form or another, but one question, namely, the validity of the extension of the limits of the city of Houston. In our opinion, this question is correctly and completely answered in favor of the validity of such extension by saying that on the former appeal of this case it was not only decided, and in our opinion correctly, that such extension was valid and legal, but that, even if it was not, the state only can complain. Norris v. Waco, 57 Tex. 635; Kettle v. City of Dallas, 35 Tex. Civ. App. 632, 80 S. W. 877; Miller v. County Commissioners, 107 Md. 442, 69 Atl. 118; Madry v. Cox, 73 Tex. 541, 11 S. W. 541; Woolverton v. Albany, 152 Ind. 78, 52 N. E. 455; section 5, art. 11, Constitution of Texas; Enabling Act (Session Laws 1913, p. 310); Validating Act (Vernon's Ann. Civ. St. Supp. 1918, art. 1096k); Validating Act (Act 34th Legislature, p. 148, c. 94 [Vernon's Ann. Civ. St. Supp. 1918, art. 1096j]).

In addition to what has been said before, it might be added that the majority of the voters of the city of Houston, including the territory added by the charter amendment of 1913, of which appellants complain, having since the adoption of said amendment, by an election called and held for that purpose, adopted an amendment to the charter of the city of Houston, establishing the boundaries of the city of Houston, setting them out by metes and bounds so as to include the territory under consideration, said amendment having been held in accordance with an act of the Thirty-Fifth Legislature, c. 43, p. 71, (Vernon's Ann. Civ. St. Supp. 1918, arts. 1096½–1096½f), authorizing the consolidation of adjoining cities, and at which the city of Houston was consolidated with the city of Houston Heights by an amendment to its charter, establishing its limits and boundaries so as to include Houston Heights and all territory here under consideration, such extension, and the fixing of such boundaries and limits, will not now be disturbed, for at the election adopting such amendment the complaint of appellants that the inhabitants of the annexed territory had no voice in the establishment of the boundaries was met, for the election was called in the city of Houston and embraced the said annexed territory, and the said inhabitants were afforded an opportunity to and did participate in said election establishing said boundaries, and the extension of the city limits so established and acted upon, and in pursuance of which vast sums of money, aggregating several million dollars, have been expended in public improvements upon the added territory alone, will not be set aside or disturbed.

In our judgment the demurrers to appellants' petition were properly sustained, and therefore all of the assignments of appellants are overruled, and the judgment of the court below is in all things affirmed.