TOD et al. v. CITY OF HOUSTON.
(No. 496–4133.)

(Commission of Appeals of Texas, Section B. Oct. 21, 1925.)

1. **Municipal corporations** ⬅➡33(10)—Validity of extension of city limits cannot be collaterally attacked by property owner.

Where extension of city, under charter and Home Rule Amendment of Constitution, to include plaintiff's property, was regular, and city exercised and assumed municipal authority over property annexed, *held* that the validity of the extension of the city limits could not be collaterally attacked by owner of the property within the extension, but such attack must be direct by officers of the state.

2. **Municipal corporations** ⬅➡29(2) — Annexation of territory to city held lawful.

Where annexation to the city of Houston was in compliance with section 2b of the Charter of the city of Houston as amended in 1913 under the Home Rule Amendment of the Constitution, *held* such annexation was lawful.

3. **Municipal corporations** ⬅➡29(2) — Courts must write limitations on power to annex territory, where no express limitations in law.

Where, under the wording of city charters, there is no express limitation on the power of a city to annex adjoining territory, the courts

themselves must write such limitations into the law, if any limitations are to be enforced.

4. **Municipal corporations** ⬅➡29(4) — Annexation of land less than two miles from city limits held not abuse of discretion.

Where the city of Houston, pursuant to section 2b of its Charter as amended in 1913, and under the Home Rule Amendment of the Constitution which contained no express limitations on power of city to annex territory, annexed territory to its limits, the farthest point of which was less than two miles from the former city limits, *held* that such annexation was not an abuse of its power, in view of fact that growth of city would soon include territory annexed.

5. **Municipal corporations** ⬅➡29(4) — Whether one portion of the land annexed was adjacent to city not test of regularity of extension.

Whether one portion of the land sought to be annexed by a city was adjacent to its old city limits or not is not a true test of the regularity of such extension.

6. **Municipal corporations** ⬅➡966(4)—Statute providing for attachment of land on navigable streams to city for limited purposes held not to limit city's right to tax such land for general purposes, where property regularly annexed.

16 Gammel's Laws, p. 47, authorizing cities and towns on navigable streams to include such stream and certain lands on both sides thereof in city limits for certain limited purposes, which were not to be taxed unless within line and limits of general city limits, *held* not to prohibit city from taxing for general city purposes such property, which had been regularly annexed, under the law, to the city.

7. **Schools and school districts** ⬅➡22—Legislature has power to create and change independent school districts.

Legislature has the power to create and change independent school districts as it pleases, unless there be an infringement on the rights of the holders of indebtedness against the district.

8. **Schools and school districts** ⬅➡99—City extending territory to include independent school district has right to tax annexed territory for school purposes.

It was within power of Legislature to pass Vernon's Ann. Civ. St. Supp. 1922, art. 2815c, providing that, whenever the limits of an incorporated city or town, which constitutes an independent school district, are extended to embrace the whole or part of another school district, the portion of the district embraced within the extension shall become part of district constituted by such town or city, and hence, when city of Houston extended its territory to include school district in which plaintiff's property was located, it had right to collect school tax from plaintiff, inasmuch as bonded indebtedness of annexed district was adjustable under the statute, and bondholders were sufficiently taken care of thereunder.

Error to Court of Civil Appeals of First Supreme Judicial District.

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Suit by Mrs. Osceola E. Tod and others against the City of Houston. A decree for plaintiffs was reversed by the Civil Court of Appeals (258 S. W. 839), and plaintiffs bring error. Affirmed.

J. S. Bracewell and H. H. Cooper, all of Houston, for plaintiffs in error.

Sewell Myer and Roy Scruggs, both of Houston, for defendant in error.

POWELL, P. J. The opinion of the Court of Civil Appeals can be found in 258 S. W. 839. It is complete in every way, and we do not think it necessary to repeat that statement here. We shall make such statement only as has a bearing upon the two real issues in the case.

On the 17th day of July, 1916, the city of Houston extended its then city limits so as to include *adjacent* territory known as block 38 of the Port Houston addition to said city, comprising lots 1 to 16, inclusive, thereof. This annexation was had in compliance with section 2b of the charter of the city of Houston, as amended in 1913 under the Home Rule Amendment of the Constitution. This section provided for extension of the city limits by annexation of adjacent territory with or without the consent of the territory or inhabitants being so annexed. Immediately upon such annexation being effected, it is agreed in the statement of facts that the city of Houston—

"has exercised the municipal functions over the territory included within the ordinance of 1916, by levying, assessing, and collecting taxes in said territory since that time, by issuing building permits, and that said territory has been continuously treated and regarded by the city authorities as a part of the city of Houston since the passage of said ordinance of 1916."

There seems to have been no protest against this annexation until Mrs. Tod, a property owner in the annexed territory, filed this suit on February 15, 1919. In that suit, she asked that the city be enjoined from the collection of taxes of every kind so far as her property was concerned. We shall first refer to taxes for general municipal purposes, and leave the school tax for later discussion. The trial court enjoined the collection of all taxes. The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment for the city of Houston in a very able opinion written by Chief Justice Pleasants.

[1] The Court of Civil Appeals did not go into the validity of the extension of the city for general purposes so as to include the Tod property. It held as follows upon this point:

"This brings us to a consideration of appellant's proposition that the question of the validity of the extension of the city limits, so as to include appellees' property, cannot be raised collaterally in a suit of this character. The city, in making the extension, having acted under authority conferred upon it by law, and the ordinance making such extension not being void on its face for want of authority in the city council to pass it, or for any other reason, and the city having assumed and being now in the exercise of municipal authority over all of the annexed territory, the question of whether Mrs. Tod's property was so situated that its inclusion in the extension was a wrong and injustice to her cannot be raised in this suit. The stability of municipal boundaries and the orderly and efficient administration of municipal government requires that the judgment of the city authorities, empowered by law to fix the boundaries of the municipality, as to the propriety or justice of including particular property within such boundaries, cannot, after such boundaries have been fixed, be questioned by the owner of the property unless the state, through its proper officers, join in a suit brought directly for that purpose. We think this conclusion is sustained by an unbroken line of authorities. Ex parte Koen, 58 Tex. Cr. R. 279, 125 S. W. 401; State v. Dunson, 71 Tex. 65, 9 S. W. 103; Cohen v. City of Houston (Tex. Civ. App.) 176 S. W. 809; Cohen v. Houston (Tex. Civ. App.) 205 S. W. 757; City of Carthage v. Burton, 51 Tex. Civ. App. 195, 111 S. W. 440; Railway v. Bratcher, 54 Tex. Civ. App. 10, 118 S. W. 1091; Short v. Gouger (Tex. Civ. App.) 130 S. W. 267; Graham v. Greenville, 67 Tex. 62, 2 S. W. 742; El Paso v. Ruckman, 92 Tex. 86, 46 S. W. 25; Parker v. Harris County Drainage District No. 2 (Tex. Civ. App.) 148 S. W. 351; Brennan v. City of Weatherford, 53 Tex. 330, 37 Am. Rep. 758; Crabb v. Celeste Independent School District, 105 Tex. 197, 146 S. W. 528, 39 L. R. A. (N. S.) 601, Ann. Cas. 1915B, 1146; State v. Bradshaw (Tex. Civ. App.) 228 S. W. 658; Town of Henderson v. Davis, 106 N. C. 88, 11 S. E. 573; Town of Searcy v. Yarnell, 47 Ark. 269, 1 S. W. 319; State v. Fuller, 96 Mo. 165, 9 S. W. 583; City of Houston v. Little (Tex. Civ. App.) 244 S. W. 247."

We have read these authorities cited by the Court of Civil Appeals, and they seem to sustain that court. Our Supreme Court has repeatedly held to this effect. We quote from the opinion of that court in the case of Crabb v. Celeste Independent School District, 105 Tex. 197, 146 S. W. 528, 39 L. R. A. (N. S.) 601, Ann. Cas. 1915B, 1146, as follows:

"By reason of this view it will not be necessary to discuss that feature of the case further than to suggest that, since the Celeste independent school district, a quasi municipal corporation, was acting under color of law, its legality could only be determined by a suit brought for that purpose in the name of the state, or by some one under the authority of the state who has a special interest affected by the existence of such corporation. Plaintiffs, in the capacity in which they sued, could not maintain a cause of action for the purpose of annulling the independent school district. Brenham v. Bradshaw [Brennan v. Weatherford] 53 Tex. 337, 37 Am. Rep. 758; Graham v. City of Greenville, 67 Tex. 62 [2 S. W. 742]; City of El Paso v. Ruckman, 92 Tex. 89 [46 S. W. 25]."

[2] The reason for this rule is well stated by the court itself, and we think the decisions are sound. Much harm could come from permitting individual citizens from year to year to collaterally attack the validity of a city government. It seems much better to require a direct attack promptly made by the state, or some one in authority. But we do not care to rest our opinion upon this rule. Even if we consider the claims of Mrs. Tod, we find that she is not entitled to enjoin the collection of these taxes. If the city of Houston had a right to annex this territory, it had a right to tax the property situated therein for general city purposes, unless prohibited from doing so by law. Was the territory lawfully annexed? We think so. This question has been repeatedly before our courts, and similar extensions have always been held valid. See Cohen v. City of Houston, 176 S. W. 809; Cohen v. City of Houston, 205 S. W. 757; Eastham v. Steinhagen, 111 Tex. 597, 243 S. W. 457; City of Waco v. Higginson, 243 S. W. 1078. In the Cohen Cases, writs of error were denied by the Supreme Court. In the Steinhagen Case, the opinion was by our Supreme Court, written by Justice Greenwood, and the Cohen Cases were approved. In the Higginson Case, the opinion was by this section of the Commission of Appeals. We followed the other cases just mentioned.

[3, 4] In one of the Cohen Cases, the city of Houston almost doubled its size by the annexation there involved. In the Steinhagen Case, Beaumont added several new sections by the annexation there in question. In the Higginson Case, a vast amount of land was added to the city of Waco. In the instant case, the ordinance of 1916 added a tract of land; the farthest point probably being less than 2 miles from the former city limits of Houston. The property of Mrs. Tod was only about 1½ miles from the prior city limits of Houston. The city of Houston spent millions for a municipal wharf. A port is a great asset to a city. It seems to be a proper municipal function. The city limits had for some time included the principal municipal wharves. In 1916, the boundaries were extended so as to include land ranging from 1½ to 2 miles down the channel. A map of the extension accompanies the record. It shows several private wharves and industries within this territory. There is a probability of immediate development of the city of Houston in this new territory. It is near enough to the thickly settled part of Houston to justify the city of Houston in the view that its growth would soon include the territory annexed. Where that is true we do not think it could be seriously contended that the city had exceeded its authority. There is *no express limitation* upon the power of a city to annex *adjacent* territory. Therefore the courts themselves must write such limitation into the law if any limitation is ever enforced. Under the *wording* of this and similar city charters, the city of Houston could block up a strip of land adjacent to its present boundaries and run an extension for an unlimited distance, taking in land which in all probability would not be settled up as a part of the city for years and years. We do not believe the Legislature intended to authorize any such extension by a city. But we think the courts would be entirely unauthorized to say that Houston abused its discretion or acted beyond the clear intent of the statute in annexing this territory under the facts here present.

In the Cohen and Higginson Cases, agricultural lands were included in the scheme of annexation. But, they were near enough to the developed part of the city in each case to justify the conclusion that the city was ready to convert the farms upon the agricultural lands into homes for the people of the city. We think these extensions must be gradual and come about from time to time as the city itself expands and knocks at the gates of the proposed extensions. Whenever that point is reached, the burdens of city taxation will soon bring to the taxed citizens of the new territory the advantages which always accrue to the inhabitants of our cities. The development of Port Houston, and the protection of the city in the neighborhood, all done at the expense of the city, has doubtless enhanced the value of the land of Mrs. Tod and her neighbors to almost undreamed of figures.

[5] It is true that the Tod tract itself was not adjacent to the old city boundaries of Houston. But that is not the test. The extension of 1916 involved one contiguous body of land. That contiguous body of land was adjacent to the city of Houston. This was the exact situation in the Higginson Case, supra.

[6] We think there can be no question about the legality of this extension. Therefore the city of Houston was entitled to tax the property in the new territory, unless prohibited by law from doing so. Is there any such prohibition? We think not. The only *possible* contention to the contrary grows out of a statute passed in 1913 which authorized cities and towns upon navigable streams to include such stream and certain land on both sides thereof in the city limits for *certain* purposes. See Gammel's Laws of Texas, vol. 16, p. 47. Under this act, Houston was authorized to include the ship channel and land lying on both sides thereof for a distance of 2,500 feet from the thread of said channel to a distance of 20 miles in an air line from the ordinary boundaries of said city. But this inclusion was for certain defined purposes only. One of those purposes was the right to take all such land, at the option of the city, for wharf or other similar municipal purposes. This could be done by

condemnation. A part of the statute reads as follows:

"Said city shall have no right to tax the property over which such boundaries are so extended unless such property be within the line and within the limits of the general city boundaries or limits."

The act further speaks of the statute as authorizing this 20-mile extension "for the *limited purposes named*" [italics ours]. That same act also provided that such extension should not include any portion of any incorporated city or town. The annexation attempted in the instant suit did not involve any part of any incorporated city.

Immediately upon the passage of aforesaid act, the city of Houston adopted an ordinance taking advantage thereof. But in said ordinance it was expressly provided that none of the property so added should be taxed. There was a complete recognition by the city of that part of the statute. Such annexation was expressly under the statute and solely for the purposes therein provided.

It is not necessary for us to determine whether or not the Tod property was "within the line and within the limits of the general city boundaries." There was no attempt to tax the property until the city, acting, not under the port bill, but under its other powers, annexed the Tod land to the city for *general purposes.* There is no inconsistency in these rights of the city of Houston. It has the right to run its lines 20 miles down the channel for *limited purposes.* It has the other right and the concurrent right to extend its limits by the reasonable addition of adjacent territory for *all* purposes. Mrs. Tod's property is within 2,500 feet of the thread of the channel and comes under both statutes. But she is not taxed but once. On the other hand, other parts of the annexation of 1916 are not within the 2,500-feet limit. The act of 1913 protected Mrs. Tod from taxation as long as her land was not annexed to the city for all and general purposes under its general charter provisions. Since the land has now been annexed in this latter way, the city has a right to tax it just as it does the land around the courthouse in the heart of the city of Houston. Consequently we think it must be held that the Court of Civil Appeals properly ruled that the city of Houston was entitled to collect its taxes in this annexed territory for general purposes.

This brings us to the tax for school purposes. Has the city of Houston the right to collect the school tax? We think so, as did the Court of Civil Appeals.

[7] Cities in Texas in many instances have operated in dual capacities. On the one hand, the municipality acted in general matters. On the other hand, it assumed control of its schools. This dual capacity has been frequently expressly recognized by our Supreme Court. For instance, see Rockdale v. Cureton, 111 Tex. 136. In many cases, the boundaries are the same for city and school purposes. In others, this is not true. So long as the city itself governed its schools, the boundaries have generally been identical for all purposes. Until March 20, 1923, the city of Houston acted in this dual capacity. The trustees of the city schools were appointed by the mayor and city council. But in 1923 the Legislature enacted the Houston independent school district statute, which provided that the people could elect their own trustees and take over the entire management of the schools. The new act included within the new independent district all the territory of the municipality, not only as it then existed, but the statute expressly provided that future additions to the city should automatically become a part of the school district also. Therefore the last act of the Legislature has placed Mrs. Tod's property in the Houston independent school district. The Legislature has the power to create and change independent school districts as it pleases, unless there be an infringement of the rights of the holders of indebtedness against a district. We shall discuss this feature a little later.

[8] Early in 1916, Mrs. Tod's property was a part of common school district No. 20 in Harris county. In 1919, the Harrisburg independent school district was created by the Legislature, and under this act said Tod property was included in the Harrisburg district. But at that very time there was on the statute books the following law:

"Whenever the limits of any incorporated city or town within this state, which city or town constitutes an independent school district shall be so extended or enlarged, or shall have been so extended or enlarged, as to embrace within the limits of such incorporated city or town the whole or any part of any independent or common school district adjacent to such incorporated city or town, that portion of such adjacent independent or common school district so embraced within the corporate limits of such incorporated city or town, shall thereafter become a part and portion of the independent school district constituted by such incorporated city or town.

"Provided, however, that if such independent or common school district so brought, in whole or in part, within the limits of such incorporated city or town, shall have an outstanding bonded indebtedness, then such incorporated city or town shall become bound and liable for the payment of such proportion of the bonded indebtedness of such independent or common school district as the assessed value of the portion of such independent or common school district so brought within the incorporated limits of such city or town, shall bear to the whole assessed value, of such independent or common school districts so encroached upon, as such assessed values are shown upon the last preceding county tax assessment rolls; and thereafter, such incorporated city or town shall pay either directly or through the officer

of such independent or common school district, the proportion of the interest and principal of such bonded indebtedness for which they so become liable.

"If within the portion of such independent or common school district so brought within the limits of an incorporated city or town there should be situated any real property belonging to such independent or common school district, such city or town may acquire the same upon such terms as may be mutually agreed upon between the city council of such city and the authorities of such independent or common school district.

"Provided, further, however, that none of the provisions of this article shall be applicable where it shall be determined at an election held within such incorporated city or town by majority vote of those voting thereon that the territory or any portion thereof to be taken into the limits of such incorporated city or town shall not thereby become a part and portion of the independent school district constituted by such incorporated city or town, but shall be taken into the city limits for municipal purposes only, and shall remain for school purposes, a portion of the adjacent independent or common school district as though said city limits had not been extended." Article 2815c, 1922 Supplement, Vernon's Sayles' Revised Civil Statutes.

Under the authority of the act just quoted, the city of Houston extended its school district so as to include the Tod property. The Legislature in its last expression has confirmed this action and placed the Tod property in the Houston district.

As already stated, the Legislature had authority under the decisions to change boundaries of independent districts, unless in doing so the obligations of a contract evidenced by bonds already executed should be impaired. It seems to us that the act above quoted clearly takes care of the bondholders. The city of Houston is made liable by law for its fair portion of the indebtedness of the district it invaded. The Harrisburg district has a perfect right to force the Houston district to fairly adjust this old indebtedness. If they will not do so otherwise, the Harrisburg district could resort to the courts and force such action. The law deprives the old district of no rights. It does not take its property without compensation. On the other hand, the bondholders will not be permitted to suffer. If necessary, the courts would hold both districts responsible for the payment of the bonds. But in that event the courts would just as surely see to it that the old district, if necessary, impounded the taxes collected on the territory formerly in its boundaries, so far as the same were levied for the payment of the bonds.

This very statute was under construction in the case of Washington Heights Independent School District v. City of Fort Worth (Tex. Civ. App.) 251 S. W. 341. In that case, the city of Forth Worth annexed portions of other independent districts. The old districts made the same contentions as Harrisburg is making here. They were overruled by the Court of Civil Appeals at Texarkana. It is true the Supreme Court granted a writ of error in the Fort Worth Case "on the importance of the question." The writ was granted in the instant case for the same reason. But, after the writ in the Fort Worth Case was granted, the parties compromised the case, and the writ was dismissed by agreement. A few months later, Chief Justice Pleasants wrote the opinion in the case at bar, and followed the Texarkana court in the Fort Worth Case. We refer to these two opinions. They are not lengthy in discussing the school district question. They are in agreement with each other. We have found no decision to the contrary.

It is but natural, after all, for the Legislature to have enacted this legislation. It is generally better for people to be a part of the same school district and city. If they live in Houston, they will, generally speaking, have better school advantages in the Houston school district. It seems clear that there are not enough children in this Tod neighborhood or section of the 1916 addition to Houston to warrant that city in establishing a school near the Tod home. But in such cases the school laws provide for transfers to a nearby school. These equities by the school districts have been worked out under the law, and children have a convenient school which they may attend.

We see no reason to say that the Legislature was without authority to pass the school statute we have quoted. Under that statute, the Houston school district has the right to collect its school tax on the Tod property. Of course it must and will be compelled to obey that other part of the statute with reference to an assumption of its proper part of the debt against the old school district.

We conclude that the Court of Civil Appeals correctly denied in toto the prayer of plaintiffs in error for injunctive relief. Therefore we recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.