STATE of Texas by the Criminal District
Attorney ex rel. Don WARBRITTON,
et al., Appellants,

v.

SCHOOL BOARD OF THE CITY OF
MARSHALL et al., Appellees.

No. 7211.

Court of Civil Appeals of Texas.

Texarkana.

June 28, 1960.

Rehearing Denied Aug. 9, 1960.

Gaines Baldwin, Smith & Hall, Marshall, for appellants.

Jones, Brian & Jones, Franklin Jones, Marshall, for appellees.

DAVIS, Justice.

Plaintiffs-appellants in accordance with an order of the District Court of Harrison County, Texas, brought a Quo Warranto proceedings by the State of Texas through the Criminal District Attorney of the 71st Judicial District on the relation of the majority of the Trustees of the Woodlawn Common School District No. 13 of Harrison County, hereinafter referred to as District 13, and others, against defendants-appellees, the City of Marshall, the members of its City Commission and the members of the Marshall School Board. The suit was an atack on a City Ordinance that the City of Marshall passed under Article 2803 of the Vernon's Ann.Revised Civil Statutes extending the city limits of the City of Marshall for school purposes only so as to take in and consolidate the Marshall Independent School District with District 13. Appellants alleged that the order entered by the City Commission in behalf of the City of Marshall was void. They also alleged that fraud was perpetrated upon the signers of the petition, in that in the early part of the year 1958, the School Board of the Independent School District had put into operation a plan to force various Common School District members to seek consolidation with the Independent School District by writing to them a letter advising them that the Marshall Public Schools would not accept transfer pupils for the year 1958–1959, and would not consider any petition for consolidation after the last week in June, 1958.

Early in May, 1958, 48 persons in District 13 signed a petition binding themselves to resist annexation of District 13 by the City of Marshall. Following the time that the above petition was signed, another petition was circulated in District 13 addressed to the City of Marshall, and 107 people signed the petition for consolidation. This was called the Ives petition. On the Ives petition about 38 of the people who signed the original petition, signed the petition to the City of Marshall, in which they requested that District 13 be consolidated with the Marshall Independent School District. This petition was filed with the City Commission of the City of Marshall on June 2, 1958.

On June 6th, 7th, and 8th, 22 of the qualified voters who signed the Ives petition to the City of Marshall each signed affidavits in which they withdrew their name from the Ives petition to the City of Marshall. A hearing was had on the Ives petition on June 10, 1958. It was decided at that time that only 96 of the people who signed the Ives petition were resident, qualified voters of District 13. The City Commission passed an ordinance extending the city limits of the City of Marshall so as to take in District 13.

The appellants further allege in their petition that the City Commission did not consider the number of qualified voters living in District 13 when they passed the ordinance, and that the ordinance was void because the City Commission when it retired to its chambers did not consider anything but the Ives petition in arriving at its decision. There was evidence in the trial of the case that there was anywhere from 136 to 150 resident, qualified voters in the district. There was further evidence that

at least 3 of the 96 on the Ives petition were not resident, qualified voters in the district, and conflicting evidence that at least one other was not a resident, qualified voter. Taking into account the 22 withdrawals, this would leave 70 or 71 qualified voters on the petition that the city considered.

The case was tried before a jury, and only one issue was submitted. The issue submitted and the jury's answer thereto is as follows:

"Special Issue No. One:

"Do you find from a preponderance of the evidence, if any, that on June 10th, 1958, the Ives Petition at the time it was presented to the City Commission, did not have on it a majority of the resident qualified voters of the Woodlawn Common School District?

"Answer 'it did not have a majority' or, 'it did have a majority.'

"Answer: 'It did have a majority.'

"In answering the foregoing Special Issue No. One, you are instructed that you will not count as resident qualified voters on such petition, the name or names of any whom you find from a preponderance of the evidence signed it, and later executed an affidavit with the intention at the time of the execution of such affidavit, of withdrawing his or her name or names from said Ives petition."

The form of the issue with the instructions thereto were objected to by the appellants, and they submitted two specially requested issues. One was a differently worded issue than the one submitted on the same issue, and the other was on the question of fraud. There was no admission of the number of qualified voters in the district. The statute requires the City Commission to be certain that a majority of the qualified voters of a district to have signed the petition before they take any action to consolidate the district. This point was decided by the Commission of Appeals in

Missouri K. & T. R. Co., of Texas v. City of Whitesboro, 287 S.W. 904, 906, in holding improper the collection of a tax. The question turned on whether territory brought into the city under Article 2883 of the Revised Civil Statutes, identical with our present Article 2803, should be subject to tax. In describing the capacity in which the city acts in extending its territory for school purposes only, Judge Bishop of the Commission of Appeals said:

"When the City of Whitesboro in 1909 extended its corporate limits for school purposes only, including within its corporate limits territory not embraced within the corporate limits of the municipality, it was exercising its powers as a duly constituted independent school district, and not the powers conferred upon it as strictly a municipality, exercised for strictly municipal purposes, and in doing so it organized and created a school district not within the contemplation of Art. 7, Sec. 3 of the Constitution * * *."

City of Rockdale et al. v. Cureton, 111 Tex. 136, 229 S.W. 852; Temple Independent School Dist. v. Proctor, Tex.Civ.App., 97 S.W.2d 1047; and Tod v. City of Houston, Tex.Com.App., 276 S.W. 419, opinion approved by Supreme Court.

■ Where annexation is created solely by legislative grant, as in this case, the factual prerequisites of its exercise must actually exist, and nothing short of such actual existence will suffice to make it valid. 64 A.L.R. 1341 and American Distilling Co. v. Sausalito, 34 Cal.2d 660, 213 P.2d 704, 18 A.L.R.2d 1247, 1252; 37 Amer.Juris. 640, Sec. 24; Mesquite Independent School Dist. v. Gross, 123 Tex. 49, 67 S.W.2d 242.

■■ The issue was not properly submitted because the trial court did not ask the jury how many resident qualified voters there were in District 13 as of June 10, 1958. There was conflicting evidence on the number of qualified voters. The evidence ran all the way from 136 to 150.

Under the evidence in the case, the jury could not consider more than 70 or 71 signers on the Ives petition to the City of Marshall as of that date. Rule 94, Vernon's Ann.Texas Rules of Civil Procedure. If there were only 136 resident qualified voters in District 13, the jury's answer to the issue would be right. But, if there were 150 voters within District 13 on June 10, 1958, and there were only 70 or 71 signers to the petition, then the jury's answer to the issue is wrong. By their point 9 appellants challenge the findings of the jury on the ground that it is contrary to the overwhelming weight and preponderance of the evidence. 4 Tex.Jur. (2) 376, Sec. 832. Considering the entire record in the light in re King's Estate, 150 Tex. 662, 244 S.W.2d 660, the point must be sustained and the judgment of the trial court reversed and the cause remanded.

By their first four points, appellants complain of the action of the trial court in permitting testimony about the affidavits of the 22 persons who signed the withdrawal affidavits on the 6th, 7th, and 8th of June, 1958. The trial court erred in permitting such interrogation without affirmative pleading on the part of the appellees. Rule 94, V.A.T.R.C.P., and authorities cited thereunder. We sustain the points.

By point 5, appellants complain of the action of the trial court in permitting opinion evidence as to who were resident qualified voters. The evidence should have been restricted to the facts in the case. The point is sustained.

By their points 7 and 8, appellants complain of the action of the trial court because the evidence showed that the City Commission failed to make a fair investigation of the question of whether a majority of the qualified voters in District 13 signed the petition, and in so doing arbitrarily passed the ordinance under attack, and in failing to grant a new trial in the light of the evidence that the City Commission acted capriciously and arbitrarily without

making a fair investigation to determine whether a majority of the resident qualified voters of District 13 had signed the Ives petition. Under the pleadings and evidence, an issue should have been submitted. The points are sustained.

Appellants' point 6 is without merit and is respectfully overruled.

For the errors hereinabove pointed out, the judgment of the trial court is reversed and the cause remanded for trial.